**MESA PETROLEUM COMPANY,**
**Plaintiff,**

v.

**C. John CONIGLIO, et al., Defendants.**

**No. 75–28–Civ–Oc.**

United States District Court,
M. D. Florida,
Ocala Division.

Jan. 25, 1982.

See also, 5th Cir., 629 F.2d 1022.

Fred Elefant, Jacksonville, Fla., John F. Russell, Homosassa Springs, Fla., for defendant Locke.

Steven H. Gray, Ocala, Fla., for defendant Coniglio.

Stephen A. Hould, Jacksonville, Fla., for plaintiff.

## ORDER

CHARLES R. SCOTT, Senior District Judge.

This matter is before the Court upon motion of plaintiff Mesa Petroleum Company (hereinafter 'Mesa') for an order clarifying the duties of defendant C. John Coniglio in his capacity as trustee of the constructive trust created by this Court in its order of December 26, 1978.

On October 13, 1978, this Court entered a final judgment in favor of Mesa against the defendants C. John Coniglio and C. A. Locke, Jr. The judgment set forth that Mesa was to recover $159,290.67 from Locke and $159,290.67 from Coniglio, together with an award of costs plus interest from the date of judgment. The judgment also stated that the Court would, in a separate order, set aside certain real property conveyances from Locke and his wife to Coniglio and his wife that were determined to have been made with the intent of defrauding Mesa.[1]

---

1. The property presently at issue consists of four tracts of land located in Sumter County, Florida. In order to facilitate the discussion, the land will be referred to simply as Tracts No. 1, 2, 3 and 4. Certain other parcels of land, not relevant herein, were found to have been fraudulently conveyed from Coniglio and his wife to their son, C. John Coniglio, Jr. That land was reconveyed back to Coniglio, Sr. by quit-claim deed.

On December 26, 1978, the Court entered an order awarding Mesa attorneys' fees in the amount of $50,000. Moreover, having abandoned the idea of setting aside the fraudulent conveyances, the Court created a constructive trust, the *res* consisting of the fraudulently conveyed property referred to above.[2] The Court named defendant C. John Coniglio, who along with his wife was record owner of the property, as trustee.[3] The order directed Coniglio to hold the property, which consists of four tracts of land in Sumter County, Florida, in trust for Mesa, providing in paragraph three that "such trust shall be extinguished only upon the satisfaction of the judgment entered by this Court against defendant C. A. Locke, Jr. ... dated October 13, 1978, and upon satisfaction of this order entered by the Court against defendant C. A. Locke, Jr. ... dated December 26, 1978." Locke has never satisfied either the judgment debt of October 13, 1978, or the attorneys' fees order of December 26, 1978.

On August 31, 1979, Locke filed a voluntary petition for bankruptcy. *In re: Coy Aldridge Locke, Jr., d/b/a C & L Farms,* Case No. 79–541–BK–J. On June 11, 1980, Locke was granted a personal discharge in the bankruptcy proceedings.

On April 27, 1981, Mesa filed its Motion for Order Clarifying Trustee's Duties. The motion seeks an order from this Court directing Coniglio, as trustee under the trust created by order of December 26, 1978, to marshal the assets of the trust, liquidate the trust and satisfy the judgment against Locke in favor of Mesa. A hearing on Mesa's motion was held November 4, 1981. The Court determined at that hearing that

it lacked sufficient information as to the effect of Locke's bankruptcy upon both the Court's October 13, 1978 judgment and the trust created by order of December 26, 1978. Accordingly, the Court ordered all concerned parties to file memoranda elucidating and supporting their respective positions in this regard. This has been done and the Court is prepared to enter its decision.

Prior to reaching the legal issues involved herein, it is necessary to embark on a more detailed factual account that will serve as the foundation for the Court's resolution of this matter. The Court's final judgment of October 13, 1978, arose out of an action filed in 1975 by Mesa against Diamond T Cattle Company (hereinafter 'Diamond T') and Coniglio, Locke and G. Wilbur Hallauer, the sole shareholders of Diamond T. Mesa Agro, the agricultural division of Mesa, entered into a joint venture agreement with Diamond T whereby Diamond T was responsible for acquiring and grazing cattle in Florida that would subsequently be sold by Mesa in Texas. Following a serious decline in the cattle market that resulted in substantial losses to the joint venture, Mesa informed the shareholders of Diamond T that it would be unwilling to advance further funds to the joint venture without first obtaining their personal guarantees that Diamond T's share of the then-existing and projected losses would be paid. Those losses were expected to approach $425,000. Pursuant to an oral agreement, the three shareholders of Diamond T, Coniglio, Locke and Hallauer, executed individual promissory notes evidencing Diamond T's portion of the losses.

---

2. The Court's order of December 26, 1978, in addition to creating a trust beneficiary interest in Mesa as against the judgment debt of Locke, created a lien on the property as against the judgment debt of Coniglio. Moreover, the Court created a lien on the property found to have been fraudulently conveyed from Coniglio and his wife to their son, see note 1 *supra*, as against the judgment debt of Coniglio. Only the trust created in paragraph 3 of the December 26, 1978 order is relevant to the instant discussion inasmuch as Coniglio, by agreement filed February 20, 1981, was granted a release as to his personal liability to Mesa.

3. The four tracts of land at issue were conveyed by Locke and his wife, Jay Nell Locke, to Coniglio and his wife, Mary Joan Coniglio, as tenants by the entirety. Coniglio and his wife subsequently dissolved their marriage, thereby altering their ownership status from tenants by the entirety to tenants in common. Florida Statutes § 689.15 (1981). However, apparently as part of their dissolution of marriage property settlement agreement, Mary Joan Coniglio conveyed all of her right, title and interest in the four tracts of land to C. John Coniglio, leaving him as sole record title holder of the property.

On September 12, 1974, only four days prior to executing his promissory note to Mesa, Locke and his wife, Jay Nell Locke, conveyed the four tracts of real property at issue to Coniglio and his wife, Mary Joan Coniglio. Shortly thereafter, by mortgage dated September 17, 1974, Coniglio and his wife encumbered all four tracts of real property to the Federal Land Bank of Columbia, South Carolina, as security for a loan to Coniglio in the amount of $500,000.

In its opinion and judgment of October 13, 1978, the Court, following a discussion of the relevant law not pertinent to the instant matter, awarded Mesa the amount of $159,290.67 against each of the defendants Locke and Coniglio, together with costs and interest from the date of judgment. The Court also found that the conveyance of the four tracts of land from Locke and his wife to Coniglio and his wife was fraudulent. To support this finding, the Court relied upon the absence of any sales contract evidencing the transaction, the lack of any real consideration for the transfer, the absence of a real estate broker's involvement in the transaction, the close personal relationship between the transferors and the transferees, the immediate events surrounding the oral agreement and the promissory notes between Mesa and the defendants Locke and Coniglio, and the real possibility of ultimate litigation by Mesa against Locke and Coniglio. In sum, the Court found that the transfer, along with the encumbrance of the property by Coniglio and his wife as security for the loan from the Federal Land Bank of Columbia, South Carolina, were made with the specific intent of defrauding and hindering Mesa from collecting on the promissory note from Locke.

Consequently, the Court, in its judgment of October 13, 1978, indicated that it would, in a separate order, set aside the fraudulent conveyance of the four tracts of land from Locke and his wife to Coniglio and his wife. Subsequent to entry of the Court's judgment, Coniglio and his wife dissolved their marriage. Under Florida law, this changed their ownership status from tenants by the entirety to tenants in common. Florida Statutes § 689.15 (1981). On December 26, 1978, the Court entered its order awarding attorneys' fees to Mesa and imposing a constructive trust on the four tracts of land found to have been fraudulently conveyed, naming Coniglio as trustee.[4] Mesa's interest in the land was to be subordinate only to the security interest of the Federal Land Bank of Columbia, South Carolina.

On August 31, 1979, Locke filed a voluntary petition for relief in bankruptcy. In his petition, Locke listed his debts to Mesa on Schedule A–3, captioned "Creditors Having Unsecured Claims Without Priority." Nowhere on his bankruptcy petition did Locke list Tracts No. 2, 3, or 4 as property of the debtor. He did, however, claim an interest in Tract No. 1.

On October 28, 1974, shortly after Locke and his wife conveyed the four tracts of property to Coniglio and his wife, Tract No. 1 was ostensibly reconveyed to Locke and his wife pursuant to an "Articles of Agreement." This Articles of Agreement was an agreement for deed whereby Coniglio and his wife would apparently retain title to Tract No. 1 until they received from Locke and his wife the sum of $217,678.00, payable in annual installments of $19,239.00. The first installment was to be paid January 1, 1976, with each subsequent installment to be made on the first day of January of each succeeding year until the debt was paid in full. The Articles of Agreement was never recorded.

Thus, with regard to Tract No. 1, Locke listed Coniglio as a secured creditor on Schedule A–2, listed the tract as real property of the debtor on Schedule B–1, and

---

4. The Court abandoned the idea of setting aside the fraudulent conveyances after discovering Florida law to the effect that property owned by the entirety is not subject to the law of fraudulent conveyances because a judgment against one spouse cannot be enforced against the other. The Court's creation of the constructive trust was affirmed by the United States Court of Appeals for the Fifth Circuit. *Mesa Petroleum Co. v. Coniglio,* 629 F.2d 1022, 1030 (5th Cir. 1980).

listed the tract as exempt property on Schedule B–4. In claiming the exemption, Locke relied upon the fact that he and his wife purchased the property as tenants by the entirety.

On November 5, 1979, Mesa filed its proof of claim in the Locke bankruptcy proceeding. After setting forth the amount of its claim and making reference to the Court's judgment of October 13, 1978 and order of December 26, 1978, Mesa set forth that:

7. The undersigned claims the security interest under the writing referred to in Paragraph 4 hereof [the Court's judgment of October 13, 1978 and order of December 26, 1978]. . . .

8. This claim is a general unsecured claim, except to the extent that the security interest, if any, described in Paragraph 7 is sufficient to satisfy the claim.

On April 11, 1980, the trustee in bankruptcy filed an objection to Mesa's claim, which read as follows:

3. Claim Number 3 filed by Mesa Petroleum Company on January 15, 1980, in the amount of $212,584.28, filed as a secured claim, on the ground that the security (land in Sumter County, Florida) never passed into the hands of the Trustee.

This objection, if sustained by the Bankruptcy Judge, will result in the entry of an Order disallowing this claim, but the disallowance will be without prejudice to the claimant to pursue whatever security rights it may have in the property in which the security interest is claimed.

The trustee objected to two other claims on precisely the same grounds, that is, that the security never passed into the hands of the trustee. With regard to each claim objected to, the trustee employed the same language to the effect that if the objection were sustained, it would be without prejudice to the right of the claimant to pursue whatever security rights he may have in the property.

On May 7, 1980, the bankruptcy judge entered his "Order on Claims" in response to the objections filed by the trustee. With regard to Mesa's claim, the judge's order set forth that:

3. Claim Number 3, filed by Mesa Petroleum Company on January 15, 1980, in the amount of $212,584.28, filed as a secured claim, is hereby allowed as an unsecured claim for $212,584.28.

No explanation was given for the bankruptcy judge's determination as to Mesa's claim. In ruling upon the trustee's other two objections, the Order on Claims tracked the language of the trustee's Objections To Claims, that is, it expressly disallowed the secured claims "without prejudice to the claimant's right to pursue any remedy he may have in the collateral in which he may have a security interest."

Mesa, pursuant to the order of the bankruptcy judge, participated as a general unsecured creditor in the distribution of Locke's assets. Mesa was, in fact, the only unsecured creditor. As a result, Mesa received $1,056.08 on its unsecured claim. On June 11, 1980, Locke was granted a personal discharge in bankruptcy.

The question of law before the Court involves the effect of Locke's bankruptcy proceeding upon Locke's judgment debts to Mesa. More specifically, the question is whether Mesa is now entitled to a forced sale of all or any part of the four tracts of land which form the *res* of the constructive trust created in the Court's order of December 26, 1978. At the outset it is important to note that, with regard to the issues of bankruptcy law that must necessarily be considered in connection with this matter, the governing law is that which existed prior to the effective date of the Bankruptcy Reform Act of 1978. The new bankruptcy code took effect October 1, 1979. Since Locke's bankruptcy petition was filed on August 31, 1979, the proceedings were conducted in accordance with the law as it existed on that date. Advisory Committee on Bankruptcy Rules of the Judicial Conference of the United States, Suggested Interim Bankruptcy Rules and Forms, at 7 (1978).

Mesa filed its proof of claim in the bankruptcy proceeding as a secured creditor ex-

cept to the extent that its security, the four tracts of property, was insufficient to cover the debt owed to it by Locke. The claim was objected to by the trustee on the ground that the security had never passed into the hands of the trustee. The trustee apparently wanted the bankruptcy judge to disallow the claim entirely in the bankruptcy proceeding, but to make such disallowance without prejudice to Mesa's rights to pursue any remedy it might have with regard to the security itself. The bankruptcy judge, although he followed the path suggested by the trustee with respect to the other claims objected to, allowed Mesa to proceed as an unsecured creditor as to the full amount of its claim. Although not expressly stated, this decision was an implicit disallowance of Mesa's *secured* claim. The bankruptcy judge, however, offered no explanation for this action. Mesa proceeded to partake in distribution of the bankruptcy estate and, as noted, received just over $1,000 on its claim for $212,584.28.

There is no question that Locke was granted a personal discharge in bankruptcy. Thus, his *personal* liability to Mesa was extinguished. Mesa's beneficial interest in the property constituting the *res* of the constructive trust, however, continued unaffected by the bankruptcy proceeding. Counsel for Locke disputes this, arguing, that the bankruptcy judge's implicit disallowance of Mesa's claim as a secured claim is a conclusive determination of the invalidity of that claim as a secured claim. As a general proposition, it is true that "a determination by the bankruptcy court of the validity or invalidity of a lien on certain property of the bankrupt would seem . . . to be conclusive elsewhere with respect to the property in issue as between the parties to the determination and those in privity with them." 4 Collier on Bankruptcy, § 670.3 (14th ed. 1978).

■ Thus, a creditor who files his claim as secured indicating that he desires to avail himself of his alleged security while at the same time participate with other creditors as to any possible deficiency, subjects himself to a preliminary investigation concerning the validity of his security. "It may lack the prescribed form, it may be tainted with fraud, it may be defective as a preference or other voidable transfer." 3 Collier on Bankruptcy § 57.2[4] (14th ed. 1977).

In disallowing Mesa's claim as a secured claim, the bankruptcy judge offered no reasons to support his action. However, it would not appear that the disallowance was based upon any of the factors set forth above, i.e., because it lacked the prescribed form, was tainted with fraud, or was defective as a preference or other voidable transfer. Perhaps the bankruptcy judge was of the view, as is this Court, that Mesa's interest in the four tracts of property was simply not akin to a secured claim in the traditional sense. In other words, Mesa's interest in the property, though arising out of a judicial proceeding, did not constitute a judicial lien on the property. The interest was in the nature of an equitable and beneficial ownership right in the property arising out of the constructive trust imposed by this Court. *See, e.g., Bell v. Smith*, 32 So.2d 829, 832 (Fla.1947) *quoting* Restatement of Restitution § 169, wherein it was said that "[w]here a person acquires property from another by fraud, duress, or undue influence under such circumstances that a third person is entitled to restitution from the transferee, the transferee holds the property upon a constructive trust for the third person." As noted *supra*, the United States Court of Appeals for the Fifth Circuit has already affirmed the constructive trust imposed in this cause.

■ It is important to emphasize the fact that, although the bankruptcy judge disallowed the secured claim, he did not attempt to adjudicate any rights in the four tracts of property. Indeed, it would not appear that he would have been able to do so. As to Tracts No. 2, 3, and 4, the debtor had no interest whatsoever in the property. Coniglio had the legal title and Mesa had an equitable interest in the property. Thus, the property never passed into the hands of the trustee and the bankruptcy court was powerless to adjudicate any rights in the property.

**1020**

With respect to Tract No. 1, since Locke and his wife allegedly held the property as a tenancy by the entirety, that property was similarly out of reach of the trustee. The test to determine what real property passes to a trustee in bankruptcy is whether the property is transferable by the bankrupt alone or whether the property is capable of being subjected to the claims of the bankrupt's individual creditors. *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966); *Palmer v. Travelers Insurance Co.*, 319 F.2d 296 (5th Cir. 1963). Since, under Florida law, property held by the entirety cannot be conveyed by one spouse alone and is not subject to the claims of one spouse's creditors, Tract No. 1 never became part of the bankrupt estate.

With respect to the instant matter, however, the Court finds that Mesa's beneficial interest in Tract No. 1 is superior to the claim of Locke and his wife. The reconveyance of Tract No. 1 from Coniglio and his wife back to Locke and his wife, occurring as it did several years prior to the Court's order of December 26, 1978, was necessarily considered and discounted by the Court's inclusion of Tract No. 1 within the property subject to the constructive trust. Ordinarily, an agreement for deed operates under Florida law to convey equitable title to the purchaser while legal title remains in the vendor. *See Miami Bond & Mortgage Co. v. Bell*, 101 Fla. 1291, 133 So. 547 (Fla.1931). In the instant case, however, the Court, in creating the constructive trust, held that the equitable interest in the four tracts of land was held by Mesa. Consequently, it properly directed Coniglio, the record title holder, to act as trustee and to hold all four tracts for the benefit of Mesa.

In *Blankenship v. Citizens National Bank of Lubbock,* 449 S.W.2d 77 (Tex.App.1969), the Texas Court of Civil Appeals dealt with a question somewhat similar to the one raised herein. Royce Blankenship, in order to secure payment of an indebtedness to the Citizens National Bank of Lubbock, Texas, pledged a single share of common capital stock in Wallace Theaters of Crosbyton, Inc. In so doing, he represented that there were only two outstanding shares of common capital stock and that his one share represented his 50 percent ownership in Wallace Theaters.

Involuntary bankruptcy proceedings were subsequently commenced against Royce Blankenship. During the pendency of the bankruptcy proceedings, Citizens National Bank discovered that there were actually 250 outstanding shares of common capital stock in Wallace Theaters and that Royce Blankenship actually owned 125 shares. The 124 shares that he owned but that had not been pledged to the bank were represented by a stock certificate in the possession of Wesley Blankenship, Royce's brother. Accordingly, Citizens National Bank filed suit against Royce Blankenship, Wesley Blankenship and Wallace Theaters seeking reformation of the security agreement. The Texas trial court reformed the security agreement so as to include the additional 124 shares, finding that Royce Blankenship had intended to pledge his entire 50 percent interest in Wallace Theaters to the bank as security for his debt.

On appeal, Royce Blankenship alleged that the 124 shares of stock were in his constructive possession inasmuch as the stock certificate was in his name, and that all his property passed to the trustee in bankruptcy upon the filing of his bankruptcy petition. Consequently, according to Blankenship, the Texas trial court had no jurisdiction to resolve the bank's claims to the stock. The appellate court disagreed. It found that the stock was held by Wesley Blankenship in constructive trust for the bank and, therefore, the bank, not Royce Blankenship, had constructive possession. The court held that since the bank had equitable and beneficial ownership rights in the stock, the stock did not pass into the hands of the trustee in bankruptcy. Accordingly, the trial court had jurisdiction to determine the claims against the property.

Similarly, in the instant case, the bankruptcy court never acquired jurisdiction over the subject property and, therefore, properly declined to adjudicate any party's rights to it. This Court's constructive trust

thus continued unaffected by Locke's bankruptcy proceeding. This holds true with respect to all four tracts of property.

Locke argues, however, that Mesa waived any rights it might have otherwise had in its "security" by participating in the distribution of the bankrupt estate as a general unsecured creditor. As the Supreme Court made clear in *United States National Bank in Johnstown v. Chase National Bank*, 331 U.S. 28, 67 S.Ct. 1041, 91 L.Ed. 1320 (1946), a secured creditor has several options available to him in attempting to recover a debt from a bankrupt debtor.

(1) He may disregard the bankruptcy proceeding, decline to file a claim and rely solely upon his security if that security is properly and solely in his possession. [citing cases] (2) He must file a secured claim, however, if the security is within the jurisdiction of the bankruptcy court and if he wishes to retain his secured status, inasmuch as that court has exclusive jurisdiction over the liquidation of all security. [citing case] (3) He may surrender or waive his security and prove his entire claim as an unsecured one. [citing case] (4) He may avail himself of his security and share in the general assets as to the unsecured balance. [citing cases]

331 U.S. at 33–34, 67 S.Ct. at 1044. Section 57(h) of the Bankruptcy Act, 11 U.S.C. § 93(h), was a codification of this fourth option. It was designed to allow a secured creditor to receive dividends along with the general creditors only as to the amount of the creditor's claim in excess of the value of his security, i.e., the amount of any deficiency. The rule, grounded upon the principle of equality and ratable distribution, prohibits the secured creditor from enjoying the whole benefit of his security while simultaneously taking dividends from the general assets on the basis of his entire claim as if he were an unsecured creditor. 331 U.S. at 34, 67 S.Ct. at 1044.

In *United States National Bank, supra*, it was argued that Section 57(h) constituted an absolute bar to a judgment lien creditor sharing fully in the general dividends while at the same time retaining his lien on the security. The Supreme Court rejected that proposition, holding that:

[t]he fact that the judgment lien creditors received general dividends contrary to the scheme of Section 57(h) does not necessarily mean that they thereby waived their liens. Nothing in the language of § 57(h) or of any other section of the Act makes such a receipt the necessary equivalent of a waiver. It is generally true that participation by a secured creditor in distributions from the general assets on the basis of his full claim indicates a waiver of security and election to be treated as an unsecured creditor. [citing case] But that is not an invariable result flowing from the application of any rigid statutory rule. The result depends, rather, upon the circumstances surrounding the receipt of dividends. And in exceptional cases, those circumstances may demonstrate the continued vitality of the security as well as indicate that it would be inequitable to declare the security forfeited.

331 U.S. at 35–36, 67 S.Ct. at 1045. The determination of whether or not a waiver occurred is to be made with the recognition that "courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity." 331 U.S. at 36, 67 S.Ct. at 1045, *quoting Local Loan Co. v. Hunt*, 292 U.S. 234, 240, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1933). A factor in assessing the equities inhering in a particular situation is whether the receipt of general dividends by the secured creditor caused permanent injury to the unsecured creditors. 331 U.S. at 36, 67 S.Ct. at 1045.

In the instant case, the Court does not believe Mesa waived its rights in the four tracts of land by receiving a general dividend as an unsecured creditor. To begin with, an exception to the general rule that a creditor waives any rights in his security by participating as an unsecured creditor exists in cases where the security held by the creditor is not part of the assets in bankruptcy. *Robinson v. Exchange National Bank of Tulsa, Oklahoma*, 28 F.Supp. 244, 247 (N.D.Okl.1939).

Moreover, the equities in this case clearly weigh in favor of Mesa. Except for its acceptance of the $1,056.08 payment as an unsecured creditor, Mesa has never taken any action that could be construed as a waiver of its "security interest" in the four tracts of land. Mesa filed its claim as a secured claim except to the extent that the value of the security would be insufficient to cover Locke's debt to Mesa. This was the proper way for Mesa to proceed. The passage from Section 57.09 of Collier quoted by Locke is patently inapplicable because it relates to the situation where the secured creditor *filed his claim as unsecured.*

While it is true that in order to avoid any appearance of an intent to waive its rights in the four tracts of property Mesa should have declined to partake in the distribution of the bankrupt estate as an unsecured creditor, the significance of accepting the general dividend is discounted by the fact that such acceptance did not operate to injure any other unsecured creditor, because there were none. The purpose of the rule prohibiting secured creditors from sharing fully in the distribution of general dividends while simultaneously retaining their rights in their security is to ensure, as far as possible, equality and ratable distribution of the bankrupt's assets. *United States National Bank in Johnstown v. Chase National Bank, supra,* 331 U.S. at 34, 67 S.Ct. at 1044. That purpose would not be advanced by a finding that Mesa waived its rights in its security, for Mesa was the only unsecured creditor which Locke sought to discharge. In other words, the dividend paid to Mesa did not operate to diminish the estate available to other unsecured creditors, because there were no other unsecured creditors.

Neither let us forget that, in discussing equities, Mesa's "security interest" arose out of a fraudulent conveyance made with the intent of preventing Mesa from recovering on its judgment debt. Accordingly, the Court is of the opinion that Mesa's acceptance of the general dividend in the amount of $1,056.08 did not constitute a waiver of its beneficial interest in the four tracts of property which form the *res* of the constructive trust.

Therefore, in accordance with the foregoing discussion, it is apparent to the Court that Mesa is entitled to a forced sale of Coniglio's interest in the four tracts of land in order to satisfy the debts owed by Locke to Mesa arising out of this Court's judgment of October 13, 1978 and order of December 26, 1978. Accordingly, Coniglio, in his capacity as trustee under the Court's order of December 26, 1978, will be ordered to liquidate the assets of the trust and distribute the proceeds to the appropriate parties.

It is so

ORDERED:

1. The motion of plaintiff Mesa Petroleum Co. for an order clarifying the duties of defendant C. John Coniglio in his capacity as trustee of the constructive trust created by this Court in its order of December 26, 1978, is hereby granted.

2. C. John Coniglio is hereby ordered to sell the following parcels of real property at a public sale in accordance with the provisions of this order:

*TRACT NO. 1*: NE ¼ less North ½ of NE ¼ of NE ¼ and NE ¼ of SE ¼ and East ½ of NW ¼ and NE ¼ of SW ¼ and West ½ of NW ¼ of SE ¼, all in Section 22, Township 18 South, Range 22 East, and SE ¼ of SE ¼ of SW ¼, Section 15, Township 18 South, Range 22 East;

*TRACT NO. 2*: East ½ of SW ¼ less begin at NW corner of NE ¼ of SW ¼; run South 416 feet; East 208 feet; North 416 feet; West 208 feet to the point of beginning, and SW ¼ of SE ¼ and East ½ of SW ¼, all in Section 33, Township 18 South, Range 23 East;

*TRACT NO. 3*: West ½ of West ½ of Section 34, Township 18 South, Range 23 East; and NW ¼ of NW ¼, Section 3, Township 19 South, Range 23 East; and East ½ of NE ¼ of NE ¼, Section 4, Township 19 South, Range 23 East;

*TRACT NO. 4*: East ½ of SE ¼, Section 33, Township 18 South, Range 23 East.

3. The public sale shall be conducted in accordance with 28 U.S.C. § 2001(a), that is,

the property shall be sold by C. John Coniglio, either as a whole or by separate tracts, at the front steps of the Sumter County Courthouse on a date to be determined by C. John Coniglio, provided that the sale take place within 90 days from the date of this order.

4. Notice of the sale shall be made pursuant to 28 U.S.C. § 2002. Such notice shall be published once a week for four consecutive weeks prior to sale in the Florida Times-Union and the Sumter County Times. The notice shall be captioned with the style and number of this case and shall contain: the full legal description of the property, the time, place and date of sale, a statement to the effect that the property is being sold by C. John Coniglio pursuant to an order of this court, a statement indicating that the property may be purchased either as a whole or by separate tracts, and a statement indicating that the property will be sold to the highest and best bidder for cash.

5. Prior to sale, C. John Coniglio and Mesa Petroleum Co. shall each employ a disinterested person to appraise the property. The property shall be appraised both as a whole and as to each individual tract.

6. The sale of the property shall be to the best and highest bidder for cash; provided, however, that no offer shall be accepted that is less than two-thirds of the mean appraised value of the property as a whole or the particular individual tract being bid upon. The "mean appraised value" is to be derived by averaging the figures of the appraiser employed by C. John Coniglio and the appraiser employed by Mesa Petroleum Co.

7. Upon sale, C. John Coniglio shall promptly report to this Court and move for an Order Confirming Sale.

8. Upon confirmation by this Court, C. John Coniglio shall distribute the proceeds of the sale as follows:

*First* : To the Federal Land Bank of Columbia, South Carolina in an amount sufficient to satisfy the debt owing from C. John Coniglio and Mary Joan Coniglio, his former wife, arising out of the mortgage loan agreement dated September 17, 1974, which debt is secured by the four tracts of land described in paragraph 2 of this order.

*Second* : To Mesa Petroleum Co., up to and including an amount sufficient to satisfy the total claims of Mesa Petroleum Co. against C. A. Locke, Jr. arising out of this Court's judgment of October 13, 1978 and order of December 26, 1978.

*Third* : The balance, if any, is to be deposited in the registry of this Court, in which event the Court will consider the claims of C. John Coniglio with respect to costs and attorney's fees incurred in administering the constructive trust and conducting the sale ordered herein.

9. Upon confirmation of the sale by this Court, and satisfaction of the mortgage debt owed to the Federal Land Bank of Columbia, South Carolina, C. John Coniglio shall execute and deliver a good and sufficient deed conveying the property to the purchaser or purchasers thereof; and said purchaser or purchasers, or their authorized agents, shall thereupon, without delay, be let in possession of the property so conveyed.

10. This Court retains jurisdiction of this cause for the purpose of entering such further orders as may be necessary and just, including the entry of an order confirming the sale.