In re MANUFACTURERS ACCEPT-
ANCE CORP. Debtor.

MANUFACTURERS ACCEPTANCE
CORP., Plaintiff,

v.

CARIBANK CORPORATION,
Defendant.

Bankruptcy No. 86–02737–BKC–TCB.
Adv. No. 86–0726–BKC–TCB–A.

United States Bankruptcy Court,
S.D. Florida.

April 15, 1988.

Kim Douglas Sherman, Reggie David Sanger, Ft. Lauderdale, Fla., for plaintiff.

Benson, Stalions & Moyle, William C. Stalions, Patricia Dzikowski, Ft. Lauderdale, Fla., Sparber, Shevin, Shapo & Heil-

bonner, P.A., Charles H. Lichtman, Glenn J. Waldman, Miami, Fla., for Caribank.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Chief Judge.

The status and history of this adversary proceeding (now in its 16th month) is related in this court's Order of Abstention of January 27. 82 B.R. 155 (1988) (CP 106).

Counts V through VIII, which remain pending here, seek a total of $288,228 plus interest, involving 11 separate claims, under alternative theories based upon 11 U.S.C. §§ 542, 544(a), 547 and 548(a)(2). (CP 31).

Defendant has answered and asserted 15 affirmative defenses. (CP 29). Nine days later defendant moved for leave to raise an additional affirmative defense. (CP 40, 41). That motion was granted by Judge Weaver. (CP 56, ¶ 5). One year later defendant moved for leave to raise four more affirmative defenses "to more clearly define the issues and the positions of the parties". (CP 112). That motion is now granted under Rule 15(a), Fed.R.Civ.P., made applicable here by B.R. 7015.[1]

The matter was tried on February 11.

### The Relevant Facts

Plaintiff's business was to provide customer financing for the purchase of new and used cars when dealers could not get bank financing for the customer. It always did so with funds advanced by defendant. This relationship began March 8, 1984 under a contract between the parties, Dealer Agreement For Assignment of Chattel Paper. Ex. 1.

Plaintiff ceased business a few weeks before bankruptcy and the contract was terminated under § 365(g)(1) as of the bankruptcy filing, September 5, 1986. No loans have been financed since then. However, the contractual terms and conditions remain applicable as to all loans financed or assigned before bankruptcy. Ex 1, ¶ VIII(B)(3). A large number of loans remain outstanding and it will be several years before a final accounting between these parties is possible.

Under the contract plaintiff serves as middleman between the defendant/bank and the car purchaser. Plaintiff obtains a perfected lien on the car and assigns that lien to defendant. Customers' payments go directly to the bank.

Although the assignment is without recourse, plaintiff is responsible for all collection activity against the purchaser, including repossession and resale.

Defendant's loan is secured through two arrangements:

(1) Until December 1, 1985, all of its losses following repossession were insured by credit insurance provided by plaintiff. When that insurance became unavailable, plaintiff agreed to deposit with defendant sums equal to the premiums it had previously paid. This account remains under defendant's sole control as a form of self-insurance until all loans purchased by defendant are paid in full. Ex 1 Addendum.

(2) Plaintiff is required to maintain six accounts with defendant. Three of these are general ledger accounts for documentary stamps, service charges, and the defendant's share of unearned interest. There is no dispute involving these accounts.

The remaining three accounts (including the self-insurance account described above, # 813) are in plaintiff's name; however, plaintiff has no control over deposits, with-

---

1. Only the last of these four affirmative defenses (setoff under § 553) is of any moment in this decision. It is quite possible that the setoff it now seeks already falls within its original affirmative defenses. This appears to have been Judge Weaver's view a year ago when he ruled:

"The extent of relief sought by the Defendant by way of offset can be adjudicated as the case is presently framed without prejudice to the rights of CARIBANK." (CP 56, ¶ 8).

If not, Count VI for a declaratory decree as to the validity, priority and extent of defendant's claims in essence seeks an accounting between the parties in ¶ 66, which includes the setoff raised here by defendant.

In any event, plaintiff has not been prejudiced by the delay of this amendment and the just resolution of this dispute requires consideration of defendant's setoff to the extent it is interposed here.

drawals or disbursements. All are funded directly from customer payments.

Plaintiff is entitled to monthly disbursements from only one of these three accounts, #1491. It is entitled to disbursement from the remaining two accounts, #280 and #813, only if and when all of defendant's advances for customer loans have been recovered.

This litigation is concerned solely with certain transactions in these three accounts.[2]

## Count V

■ Defendant concedes that it is not entitled to $15,914.10 tendered by dealers toward loan contracts which were not funded by defendant and, therefore, are returnable to the respective dealers. As the middleman, plaintiff asserts its right to recover this money on behalf of the dealers. Defendant's concern is that it be held harmless from the dealers' claim to this refund. Plaintiff intends to assert a setoff against some of these dealers.

In view of these circumstances, defendant is ordered to deliver either to the dealer or the debtor (at defendant's option) individual checks payable jointly to the debtor and the dealer in the aggregate total of *$15,914.10,* and the debtor is instructed to resolve its accounts with these dealers without delay. As each account is settled, the endorsement by both payees will protect defendant from double liability.

With respect to a *$36,000* payment received from Greenwich, plaintiff is entitled to that part representing payments on claims and defendant is entitled to that part which represents a return of premium on the cancelled insurance.

Plaintiff's claim for the remaining funds it seeks under Count V ($236,314) is bottomed on § 542, which requires that:

"an entity ... in possession, custody, or control, during the case, of property *that the trustee may use, sell, or lease under section 363* ... shall deliver to the trust-

ee, and account for, such property or the value of such property...." (Emphasis added).

Except the right to compensation, a chapter 11 debtor has every right given a trustee including the foregoing right. § 1107(a).

Section 363(c)(2) prohibits the use of "cash collateral" unless the secured party consents or the court authorizes the use. Cash collateral is defined to include deposit accounts. § 363(a).

■ Plaintiff argues that because defendant has no perfected lien against the automobiles, it follows that defendant has no security interest in the proceeds from the car loans which are paid to defendant. I disagree.

Under the contract between these parties and the parties' subsequent course of dealings, defendant insisted upon and the plaintiff agreed to maintain certain accounts with defendant as security for defendant's loans. The loan repayments are deposited into these accounts. The accounts are, therefore, cash collateral. Defendant's possession of this collateral is the equivalent of a U.C.C. filing. *Fla.Stat.* § 679.304(1) (1987).

■ Plaintiff also appears to argue that defendant's demands that the accounts be maintained under its complete control were so harsh, unfair and overreaching as to be unenforceable under Florida law. The evidence before me does not support that conclusion.

The loans were unacceptable to other banks. The parties dealt at arm's length and plaintiff acquiesced without protest for two and a half years to what it now argues was unconscionable. Either party had an absolute right to cancel the arrangement "by immediate written notice" at any time without penalty. Ex 1 ¶ VIII(B)(3).

I find that accounts #280 and #813 are defendant's cash collateral and, therefore, beyond plaintiff's reach under this count.

---

**2.** The parties have agreed to ignore in this lawsuit a $14.21 claim, which involved the payroll account.

It is undisputed that account # 1491 had a balance of $3,950.86 on the date of bankruptcy and that the practice between the parties had been to credit plaintiff's operating account at the end of each month with any balance over $1,000.

The defendant is ordered, therefore, to pay to plaintiff *$2,950.86* together with interest from the date of bankruptcy. The $1,000 balance is cash collateral.

Plaintiff has failed to show its present entitlement to the remaining funds it is claiming.

There may be instances in which defendant has debited a reserve account to cover a loss which is also claimed from the former insurer, Greenwich Insurance Co. To prevent a double recovery, defendant is ordered to turn over any insurance proceeds received after it has debited a reserve account and it shall reassign the contract to plaintiff in order that plaintiff may seek satisfaction from the customer.

Defendant is also required to take similar appropriate steps to avoid or redress any past or future duplicate or double recovery upon any of the assigned contracts.

### Count VI

In this count, plaintiff asserts its right under § 544 and § 1107(a) to disregard any unperfected security interest and, shielded in that armor, asks a determination of the validity, priority and amount of defendant's security interest with respect to the same items and transactions which are the subject of Count V.

These issues arose in Count V and have been resolved above. I have rejected plaintiff's contention that defendant has no valid security interest in the accounts maintained by plaintiff in the defendant bank. Because it will be several more years before all the contracts assigned by plaintiff to defendant before bankruptcy have run their course, no final accounting is possible now.

### Count VII

In this count, plaintiff contends that certain of the transactions in its accounts maintained in the defendant bank constituted avoidable fraudulent transfers under § 548(a)(1) actual fraud or (2) constructive fraud, or under *Fla.Stat.* § 726.01 (1987) the State fraudulent conveyance act, which relates solely to actual fraud.

There is no evidence before me to support a finding of actual intent to defraud; therefore, only § 548(a)(2) constructive fraud is relevant.

Section 548(a)(2) permits the avoidance of any transfer *"of an interest of the debtor in property"* within a year before bankruptcy, without receiving equivalent value, while the debtor was insolvent.

Plaintiff argues that when defendant used funds in the accounts established by the parties for that purpose to offset losses resulting from customer defaults in the installment contracts assigned by plaintiff to defendant, plaintiff received no value; therefore, the transfer was constructively fraudulent.

The fallacy in plaintiff's argument is that there was no transfer "of an interest of the debtor in property". The debtor's only interest in these accounts was in the balance remaining *after* the customer had performed his contract and after the deduction of the bank's agreed interest and other charges.

Plaintiff had no more claim to nor interest in the transfers from these accounts to defendant to offset its losses resulting from customer defaults than it had to insurance proceeds paid for those same losses from the insurance policy which these accounts replaced after that insurance was cancelled.

Without reaching any of the other elements, I find that plaintiff has failed to prove any fraudulent transfers.

### Count VIII

In this count, plaintiff contends that certain of the same transactions referred to above are voidable as preferential transfers under § 547(b). As was the case under Count VII, plaintiff must prove that the transfer was "of an interest of the debtor in property". Plaintiff has failed to do so.

I find that plaintiff has failed to prove any preferential transfers.

### Setoff

As was noted at the outset, defendant has affirmatively pleaded setoff. The setoff claimed in this instance is restricted to defendant's contractual entitlement in connection with the several accounts maintained by plaintiff in the defendant bank to debit the accounts for losses realized from customer defaults. Defendant is not asserting an independent, unrelated claim to offset plaintiff's claims.

As has already been said, these transactions did not involve monies owned by plaintiff. In effect, these were funds escrowed with the defendant pending the discharge or default of assigned individual customer loans. By mutual agreement, if and when the loan was paid off by the customer, plaintiff became entitled to the balance of the account, after deduction of defendant's stipulated charges. In the event of default, defendant had first claim to the funds to satisfy its loss.

Section 553 preserves to creditors the equitable remedy to offset mutual debts owing by the creditor to the debtor that arose before bankruptcy *against a claim of the creditor owed by the debtor that arose before bankruptcy.* As I view these transactions, they do not involve setoff in that sense. Defendant has no claim against the debtor. It has filed no claim and the claims bar date was January 8, 1987. There is no cross-claim.

I have not, therefore, considered the setoff defense. Defendant has acknowledged that this defense does not affect the three payments I have directed under Count V: the return of dealer refunds ($15,914.10), plaintiff's share of the Greenwich payment ($36,000), and the payment to plaintiff of $2,950.86 from account # 1491.

### Incidental Relief

The parties must continue to deal with one another until the last of the assigned contracts is settled. Therefore, pursuant to § 362(d)(2) stay relief is granted to the defendant (if stay relief is necessary) to administer accounts # 280, # 813 and # 1491 and related accounts until all assigned contracts are settled.

Unless Judge Weaver elects otherwise, this court abstains from hearing any differences between the parties with respect to defendant's administration of those accounts in connection with postpetition receipts and disbursements. Jurisdiction is retained solely to implement this decision.

As is required by B.R. 9021(a), a separate judgment will be entered in accordance with this decision. Each party shall bear its own costs.