**In re Owen Cray PEEPLES, Jr., f/d/b/a Peeples Builders, Debtor.**

**Charles W. GRANT, Trustee, Plaintiff,**

v.

**Owen Cray PEEPLES, Jr., Classic Lifestyle Homes, Inc., f/k/a Peeples Builders, Inc., Charles C. Space and Jill H. Space, Defendants.**

**Bankruptcy No. 88–782–BKC–3P7.
Adv. No. 88–122.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Aug. 28, 1989.

Ronald Bergwerk, Jacksonville, Fla., for plaintiff.

Janet Thurston, Jacksonville, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding came before the Court upon the trustee's complaint objecting to debtor's discharge and for other relief. A trial was held on February 9, 1989, and June 28, 1989. Upon the evidence presented, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

This proceeding is based on a three-count Complaint. Count One alleges that Debtor transferred certain property to the other defendants with an intent to hinder, delay or defraud a creditor or the bankruptcy trustee, and seeks a denial of Debtor's discharge pursuant to 11 U.S.C. Section 727(a)(2). Count Two alleges that the transfers of property are fraudulent and seeks to avoid them and recover property from Charles C. Space, Jill H. Space, and Classic Lifestyle Homes, Inc., pursuant to 11 U.S.C. Sections 548 and 550. Count Three seeks a declaratory judgment that one of the transfers was a sham.

Prior to the filing of his Petition on April 15, 1988, the Debtor owned and operated a sole proprietorship known as "Peeples Builders," a residential construction contracting business. In the spring of 1987, "Peeples Builders" entered into a contract with Charles and Susan Mellon for the construction of a home. Sometime in the early months of 1988, it became apparent to Debtor that Peeples Builders had underbid the Mellon construction job and that Peeples Builders would not be able to meet contractual obligations to suppliers of materials and labor. Aware of the increasing financial difficulties of Peeples Builders, in March, 1988, Debtor incorporated Peeples Builders, Inc.

On the advice of counsel, one thousand shares of stock in the new corporation were issued to Debtor and his wife as tenants by entirety. Debtor paid the attorney $527.00 for legal fees in forming the corporation utilizing a check drawn on the account of Peeples Builders.

On March 8, 1988, Debtor's wife wrote a check on a checking account at First Union Bank in the name of Owen C. or Jill S. Peeples in the amount of $1,950.00. The check was drawn to the order of "cash," and was endorsed by Jill Peeples, who testified that she used the money to open a personal bank account in her name.

On March 24, 1988, the new corporate entity, Peeples Builders, Inc., entered into a residential remodeling contract with Dr.

and Mrs. Mark Abramson. As a deposit, Peeples Builders, Inc., received a check in the amount of $10,000.00. Debtor deposited the Abramson check in the Peeples Builders proprietorship bank account at First Union Bank and proceeded to write $3,000.00 in checks from that account to pay for materials and supplies. On March 22, 1988, Debtor wrote a check for $7,000.00 from the Peeples Builders sole proprietorship account to Owen Peeples Custom Homes, which was then deposited in an account at American National Bank intended as a corporate account for Peeples Builders, Inc.

Upon incorporation of Peeples Builders, Inc., the sole proprietorship known as "Peeples Builders" ceased to conduct business. Debtor testified that he neither sought nor obtained new construction projects for the proprietorship and that he ceased conducting business individually other than keeping in touch with creditors about the status of payment from the Mellons and keeping in touch with the Mellons.

Debtor considered himself to be an employee of Peeples Builders, Inc. Peeples Builders, Inc., filed a corporate name change to Classic Lifestyle Homes, Inc., in the summer of 1988. Debtor continuously tried to collect the Mellon debt.

Debtor testified that on April 14, 1988, he and his wife needed funds to make the April, 1988, home mortgage payment of $1,340.42 and to pay $957.75 due on their 1987 federal income tax. Debtor and his wife approached her parents, defendants Charles C. and Jill H. Space concerning a loan. Debtor testified that his mother and father-in-law refused to make a loan but did agree to purchase some assets from them. Debtor's wife prepared a Bill of Sale dated April 14, 1988, and attached to it a handwritten list of items of personalty owned by she and the Debtor. The personalty consisted of wedding gifts and other items of household goods acquired by the Debtor and wife during the years of their marriage. The consideration recited was "$10.00 and other valuable consideration." Debtor and his wife signed the Bill of Sale before a Notary Public. Debtor testified

that he gave the Bill of Sale to the wife to deliver to her parents.

A check dated April 14, 1988, made payable to Owen C. and Jill S. Peeples from C. C. Space shows that the actual consideration paid for the purchase was $4,000.00. The check was endorsed by both Debtor and his wife, who then cashed the check and obtained cashier's checks payable to Duval Federal Savings and Loan and to the Internal Revenue Service. The balance of the check proceeds ($1,701.83) was retained by Jill Peeples.

Debtor testified that on the morning of April 15, 1988, he found a letter to him from a Jacksonville attorney representing Charles and Susan Mellon. The letter advised Debtor that the Peeples Builders contract with the Mellons was being terminated and did not include a check for the contract balance. Debtor then immediately contacted a bankruptcy attorney with whom he had previously consulted and was advised that he needed to file a petition.

Debtor then filed a voluntary chapter 7 petition on April 15, 1988, for himself doing business as the sole proprietorship of Peeples Builders. Debtor's schedule of unsecured debts included a $10,000.00 personal loan from his wife. Debtor testified that none of the unsecured debts were incurred jointly with his wife.

Debtor listed in his schedules the following assets: clothing, shoes, wedding band, watch, golf clubs, fishing equipment, two leased vehicles, a leased computer, cash in checking account, 1000 shares of stock in Peeples Builders, Inc., an account receivable of $23,000.00 due from the Mellons, and his homestead. Debtor subsequently amended his schedules to include one-half interest in a "spec" lot and residence at 11945 Oldefield Point Drive, Jacksonville, Florida.

In response to question 12(b) on the Statement of Financial Affairs of Debtor Not Engaged in Business, Debtor disclosed the April 14, 1988, sale of personalty, including the names and address of the purchasers, the fact of the relationship between the parties, and the use of the pro-

ceeds of the sale. A copy of the Bill of Sale was attached to the bankruptcy filing.

Debtor testified that the items of personalty listed on the Bill of Sale are located at the residence at 11929 Oldefield Point Drive, Jacksonville, Florida, where the debtor resides with his wife and his two minor children. There was no evidence offered that Debtor provided the funds which the Spaces used to purchase the property, nor was there proof of any understanding between the parties that the property would be reconveyed to the Peeples in the future.

Debtor introduced testimony from two expert witnesses who appraised the items of personalty listed on the Bill of Sale. The evidence supports the Spaces paid more than fair market value for the property transferred.

## CONCLUSIONS OF LAW

### Denial of Discharge

The Plaintiff/Trustee urges that Defendant should be denied a discharge under 11 U.S.C. Section 727(a)(2) based on the Debtor's transfer of "certain assets of his sole proprietorship, Peeples Builders, to defendant Classic Lifestyle Homes, Inc.," and the transfer of personalty to defendants Charles C. Space and Jill H. Space. The statutory provision reads in relevant part as follows:

Section 727. Discharge

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with the custody of property under this title, has transferred, or removed, destroyed, mutilated, or concealed ...

(A) property of the debtor within one year before the date of the filing of the petition.

Under section 727(a)(2)(A), a creditor or trustee objecting to the debtor's discharge bears the burden of proving that: (1) a transfer occurred; (2) that the property transferred was property of the debtor; (3) that the transfer was within one year of

the Petition; and (4) that at the time of the transfer, the Debtor possessed the requisite intent to hinder, delay or defraud a creditor. *In re Rowe,* 81 B.R. 653, 657 (Bankr.M.D.Fla.1987). The objecting creditor or trustee must meet that burden with clear and convincing evidence that, when considered in light of all the facts, leads the Court to the conclusion that the debtor has violated the spirit of the bankruptcy laws and should therefore be denied the privilege of eliminating the legal obligation of his debts. *In re Cohen,* 47 B.R. 871, 874 (Bankr.S.D.Fla.1985). The plaintiff has failed to carry this burden.

■ With regard to the allegation that Debtor transferred certain assets of the proprietorship, Peeples Builders to the corporation, Classic Lifestyle Homes, Inc., f/k/a Peeples Builders, Inc., the Trustee failed to produce evidence that any asset has been transferred. Debtor testified that on the date Peeples Builders, Inc., was incorporated, the proprietorship had no assets other than the Mellon receivable and the one-half interest in the "spec" lot and residence at 11945 Oldefield Point Drive. Debtor's testimony that neither of these were transferred to Peeples Builders, Inc. was not disputed. Both of those assets were fully disclosed on debtor's B–2 bankruptcy schedules. The only evidence produced of the transfer of anything from the proprietorship to the corporation is the Peeples Builders check for $527.00 for legal fees for the incorporation, and the March 22, 1988, Peeples Builders check for $7,000.00 to Owen Peeples Custom Homes. The evidence demonstrated that the $7,000.00 transferred from the proprietorship to the corporate account was the balance remaining from the Abramson deposit on the contract with Peeples Builders, Inc., and the withdrawal of the corporate funds from the proprietorship account by the Debtor was done for the sole purpose of correcting his mistake of placing the $10,000.00 corporate asset in the proprietorship account.

The Court concludes that the Trustee has failed to prove that any transfer of proprietorship property from Peeples Builders to

Classic Lifestyle Homes, Inc., f/k/a Peeples Builders, Inc., took place.

■ With regard to the allegations concerning Debtor's transfer of personalty to defendants Charles C. and Jill H. Space, the Trustee did prove the existence of a transfer as evidenced by the April 14, 1988, Bill of Sale. Similarly, the Trustee did prove the transfer of $1,950.00 from the First Union Bank account to Jill Peeples. In both instances, however, the Trustee failed to demonstrate that the property transferred was "property of the debtor." Absent clear and convincing proof of that element, a denial of a debtor's discharge is not justified:

> To warrant a denial of discharge in bankruptcy the transfer must be an actual *transfer* of valuable property *which reduces the assets available to the creditors,* and which is made with fraudulent intent. (Emphasis added).

*In re Mart,* 87 B.R. 206, 209 (Bkrtcy.S.D. Fla.1988). That the property transferred must be "property of the debtor" is axiomatic; if the property transferred is not property of the Debtor, neither the creditors nor the trustee have cause to complain because the debtor has not reduced the assets available for liquidation and distribution. 4 *Collier on Bankruptcy,* para. 727.-02[5] (15th Ed.1986) at 727–21 to 22.

In order to determine whether the property alleged in the Section 727(a)(2) Complaint to have been transferred was property of the debtor, the Court will look to state law:

> [t]he rules of property and fixing the incidents of property ownership are rules of State Law which the Federal Courts will respect.

*U.S. v. American National Bank of Jacksonville,* 255 F.2d 504, 506 (5th Cir.1958). Accordingly, this Court must determine whether the property transferred was property of the debtor under Florida Law.

In this proceeding, the property transferred by the Bill of Sale was personalty that both the Debtor and his wife variously described as "marital property," "property of the marriage" and "entireties property." Both Mr. and Mrs. Peeples repeatedly testified that they always considered and intended that the transferred property was not "his" or "hers," but rather "theirs."

Mrs. Peeples testified that the personal checking account maintained by her and the Debtor at First Union Bank was an "entireties" account set up for them over 16 years earlier by and at the express direction of her father, who was a former First Union Bank Officer. The trustee suggests that the use of the disjunctive "Owen C. *or* Jill S. Peeples" is not indicative of an entireties account. However under Florida law, the use of the disjunctive "or" may not be dispositive when a husband and wife express the intent to create an entireties account. *First National Bank of Leesburg v. Hector Supply Co.,* 254 So.2d 777 (Fla.1971).

At common law, prior to the adoption of the Married Women's Property Acts in the early nineteenth century, a tenancy by entirety was the only concurrent estate that could be created by a husband and wife, who were deemed to be one person or entity. R. Cunningham, W. Stoebuck and D. Whitman, *The Law of Property,* sec. 55, at p. 210–11 (West 1984). Although the estate by entirety was abolished in England in 1925, it has survived in the United States, where it is still recognized in twenty jurisdictions, including Florida. *Id.* at 211.

Florida state courts have historically recognized that estates by entireties can exist in personalty as well as real estate, a position which the federal courts sitting in Florida have noted and followed. *Sheldon v. Waters,* 168 F.2d 483, 484 (5th Cir.1948), *Bruce v. McClure,* 220 F.2d 330, 333 n. 2 (5th Cir.1955). Under Florida law, property held by a husband and a wife in an estate by entireties belongs to neither individual spouse but to a separate and distinct entity referred to as the "unity" or "the marriage." *Sheldon v. Waters,* supra, at p. 484, *Mesa Petroleum Company v. Coniglio,* 16 B.R. 1015 (Bankr.M.D.Fla.1982). Because neither spouse has a severable interest in or ownership right to entireties property, under Florida law, entireties property never becomes part of the bank-

ruptcy estate. *Mesa Petroleum Co.*, supra, at p. 1020.

As noted earlier, the Trustee must prove by clear and convincing evidence that the property transferred was "property of the debtor." In this proceeding, the evidence adduced by the Trustee was that both funds in the First Union Bank checking account and the items of personalty listed on the Bill of Sale were entireties property. The evidence presented did not demonstrate that the scheduled debts were joint debts of Owen and Jill Peeples. [Underlining for emphasis.]

This court is aware of a number of cases involving similar fact patterns which hold that a conveyance of entireties property *is* a conveyance of "property of the debtor." E.g. *In re Parameswaran;* 50 B.R. 780 (Bkrtcy.S.D.N.Y.1985). In those cases however, the applicable state law regarding entireties property differs from Florida law, in that one co-tenant's interest in the property is not immune from levy by a creditor of one spouse alone.

Because the Trustee has failed to prove that the property transferred was "property of the debtor," the Court need not address the issue of the Debtor's alleged fraudulent intent in the complained transfers. The Court finds for the Debtor/defendant on Count I of the Complaint.

### Fraudulent Transfer and Declaratory Judgment

█ In Counts II and III of the Complaint, the Plaintiff/Trustee seeks to set aside the transfers to defendants Charles C. Space, Jill H. Space, and Classic Lifestyle Homes, Inc., f/k/a Peeples Builders, Inc., as fraudulent pursuant to 11 U.S.C. Sections 548 and 550. The statute dealing with fraudulent transfers reads in relevant part, as follows:

Section 548. Fraudulent transfers and obligations

a) The Trustee may avoid any transfer of an interest of the debtor in property ... made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily–

(1) made such transfer ... with actual intent to hinder, delay, or defraud any entity ... or

(2) (A) received less than a reasonable equivalent value in exchange for such transfer ... and

　(B) (i) was insolvent on the date such transfer was made....

The clear intent of the statute is to allow the Trustee to recover, for the benefit of the creditors of the estate, any assets which would have become property of the bankruptcy estate under 11 U.S.C. Section 541 had the debtor not wrongfully transferred the assets prior to filing a bankruptcy petition. In order to avoid a transfer under Section 548, the Trustee must prove that the transfer was a transfer "of an interest of the debtor in property." If the debtor had no interest in the property transferred, this Court need not proceed to examine the alleged transfers with regard to the other statutory elements of proof. *In re: Manufacturers Acceptance Corp.*, 86 B.R. 729, 732, (Bankr.S.D.Fla.1988). The Trustee must prove each statutory element by "a preponderance of the evidence." *In re Matter of Emerald Hills Country Club, Inc.*, 32 B.R. 408, 420 (Bankr.S.D.Fla.1983).

The Trustee has failed to prove that any assets were transferred from Owen Peeples' sole proprietorship, Peeples Builders, to the corporation, Classic Lifestyle Homes, Inc. f/k/a Peeples Builders, Inc.

With respect to the transfer of personalty from Debtor and his wife to the Space co-defendants, the evidence demonstrated that the assets transferred constituted not an "interest of the debtor in property," but established that the assets were property of the marriage or an entireties estate. Because under Florida law a spouse does not have an individual, identifiable, divisible interest in entireties property, the Trustee cannot prevail against Debtor or his co-defendants under either Counts II or III of the Complaint.

The Court will enter a separate Final Judgment.

## FINAL JUDGMENT

Upon Findings of Fact and Conclusions of Law separately entered, it is

ORDERED:

1. Count One of the Complaint seeking a denial of discharge of Defendant/Debtor Owen Cray Peeples, Jr., is dismissed, and the Debtor will be awarded a discharge.

2. Count Two of the Complaint seeking avoidance of transfers by Defendant/Debtor to Classic Lifestyle Homes, Inc., and by Defendant/Debtor to Charles C. and Jill H. Space is dismissed.

3. Count Three of the Complaint seeking a Declaratory Judgment is dismissed.