In the Matter of Floyd JACKSON, d/b/a Crazy Jack's, Crazy Jack's Too, Country Carpet, Jackson Supply, Odds 'N Ends, D.J.'s, and Beverly Jackson, Debtors.

Floyd and Beverly JACKSON, Appellants,

v.

Douglas L. LEITCH, Trustee, Appellee.

Nos. HG87–00826, G87–755 CA6.

United States District Court,
W.D. Michigan, S.D.

June 29, 1988.

---

**212**

Thomas C. Clinton, Grand Rapids, Mich., for appellants.

John T. Piggins, Grand Rapids, Mich., for appellee.

OPINION

ENSLEN, District Judge.

The debtors-appellees ("the debtors") filed a Chapter 7 bankruptcy petition on March 19, 1987. In their bankruptcy schedules and statement of affairs, the debtors listed two jointly-owned bank accounts as exempt property. These accounts consisted of a deposit of $14,052.33 with Old Kent Bank and Trust Company and a deposit of $3,439.64 with Muskegon Federal Savings. Douglas Leitch, the Trustee-appellant in the debtors' Chapter 7 proceeding, objected to the exemption of these accounts. A hearing was held on his objection on July 21, 1987. The Bankruptcy Court entered an Order dated July 21, 1987, denying the exemptions claimed by the debtors and ordering that the funds in both accounts be turned over to the Trustee. A notice of an appeal was filed on July 31, 1987.

The monies contained in the previously mentioned bank accounts were the partial proceeds from the December, 1986 sales of two parcels of property formerly owned by the debtors as tenants by the entirety. *See* Transcript ("Tr.") at 4 & 12. The proceeds originally received from the property sales totalled $51,401.40. Tr. at 4 & 7. The debtors placed the proceeds from each parcel in separate bank accounts at the time they received them. Tr. at 6 & 8. The proceeds were originally withdrawn from the accounts by the debtors, a portion at a time. Tr. at 6–9. A portion of the monies withdrawn was used by the debtors to pay family expenses and to invest in the family business, Jackson Supply, Inc. Tr. at 6–9.

The balance of the monies (approximately $23,000.00) was redeposited in two new bank accounts prior to the debtors' Chapter 7 proceeding. Tr. at 9–10. A portion of the monies deposited to one of the accounts was later used for additional family expenses, business investment and other needs of the debtors as they arose. Tr. at 10–11. It appears that the debtors did not at the time they received the sale proceeds —and indeed do not now intend—to use any portion of the remaining monies to purchase entirety property. Tr. at 11, 17–18, 20. Subsequent to the filing of the Chapter 7 petition, the debtors invested an additional portion of these same monies in Jackson Supply, Inc., the family business. Tr. at 11.

The Bankruptcy Court concluded that because the debtors did not intend to use the proceeds for the purchase of entirety property either at the time they obtained the monies or afterwards, and because they used a portion of the monies for other purposes, the monies could not be considered entirety property under Michigan law and are therefore not exempt. Tr. at 29–30.

*Discussion*

Section 522 of the Bankruptcy Code permits debtors to elect the federal exemption specified in 11 U.S.C. § 522(d) or the exemptions available under state law (together with certain non-bankruptcy federal exemptions). The debtors elected to exempt property under state law. Section 522(b)(2)(B) of the Bankruptcy Code provides in pertinent part:

(b) Notwithstanding § 541 of this title, an individual debtor may exempt from property of the estate ...

(2)(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or join tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable non-bankruptcy law.

It is undisputed that because all the transactions in this matter took place in Michi-

gan, the "applicable non-bankruptcy law" referred to in § 522 is, in this case, the law of the State of Michigan.

The roots of the Michigan law applicable here are found *In re DePree*, 30 Am.Bankr. Rep. 629 (W.D.Mich.1935). In *DePree*, the trustee requested a bankrupt to turn over the proceeds of a loan made to him and his wife. Repayment of the loan was secured by a mortgage on property held by the bankrupt and his wife as tenants by the entirety. The *DePree* court held that although the loan was secured by entirety property, it could not be given exempt status. *DePree, supra* at 632–33. The *DePree* court said:

> No authority is cited or found to sustain a holding that a joint ownership of money with right of survivorship between husband and wife, which is *intended for no other purposes than the payment of family expenses and debts and for business investment,* places beyond the reach of creditors the fund remaining at the time of the filing of the petition in bankruptcy. *The case here is not analogous to one wherein entirety property or a homestead has been sold and the proceeds thereof are by clear intent of both parties in a state of transition to another like estate, nor is it one of the mere exchange of one entirety property beyond the reach of creditors for other entirety property....*

*Id.* (emphasis added).

The *DePree* court specifically noted that the bankrupt and his wife spent a portion of the loan proceeds on living expenses and business investment as support for its finding that neither the bankrupt nor his wife *intended* to invest the monies at issue here in entirety property. Like the debtors in *DePree*, the debtors here have used proceeds from the sale of property owned by them as tenants by the entirety to pay family expenses and to invest in a business venture. Tr. at 6–7, & 10. Further, it appears that the proceeds of this sale of the debtors' property are not in a state of transition to another entirety estate. Tr. at 4–5, 13, 17–18.

In *Muskegon Lumber & Fuel Company v. Johnson*, 338 Mich. 655, 62 N.W.2d 619 (1954), the Michigan Supreme Court held that based upon the facts before it, proceeds from the sale of entirety property were exempt from process in Michigan. However, in *Muskegon Lumber*, it was clear that the intent of the husband and wife was to immediately invest their funds in the acquisition of other entirety property. *Muskegon Lumber*, 338 Mich. at 659–61, 62 N.W.2d 619. For example, the parties issued checks for the purchase of additional entirety property within 24 hours of receiving the proceeds from the sale of their first parcel of property. *Id.* at 657–58. *Accord Matter of Jones*, 31 B.R. 372, 375 n. 4 (Bankr.E.D.Mich.1983) (noting that "[t]he evidence presented in *Muskegon Lumber* established that it was the intent of the parties that the funds be used jointly in the acquisition of other tenancy by the entirety property."). *See also In re Klein*, No. HG 78–00164–B–1 (Bankr.W.D.Mich. Nov. 28, 1978) (holding that "in Michigan proceeds from the sale of tenancy by the entirety and homestead property have the same exempt status as the realty *if the proceeds are to be reinvested in other similar property within a reasonable period.*")

Debtors argue that the Bankruptcy Court's "intent requirement" is derived from an unduly narrow reading of the *Muskegon Lumber* decision. Debtors argue further that "[t]he creation of a distinction between entirety properties and its proceeds does little more than allow for a windfall to the trustee who could not make a claim to the property had it not been sold." *See* Brief of Appellants at 6. Debtors argue further that such a narrow reading of *Muskegon Lumber* will "result ... in an exemption statute which favors the wealthy debtor who has the ability to reinvest proceeds of entireties property over the poorer debtor[s], ... who find themselves in a position of having to utilize the proceeds of entireties property for general living expenses." *Id.* The Trustee argues that to read the *Muskegon Lumber* decision expansively, as the debtors suggest, "would result in allowing cash proceeds

from the sale of entirety property to remain exempt from process for years or even decades and, presumably, if the monies can be traced, any purchase made with the cash would also be exempt from process." *See* Appellee's Brief at 6.

The Court agrees with the Bankruptcy Court's legal and factual analysis of this case. Judge Howard stated:

> Inasmuch as at the time the proceeds came into their possession the debtors did not intend to use these proceeds for the purchase of tenancy by the entirety property or replacement property, my understanding of the Michigan law as set forth in my opinion and also the *Muskegon Lumber and Fuel Company* case set forth at 338 Michigan Reports 655 [62 N.W.2d 619], if at the time the proceeds came into their possession or subsequently the creditors—or, excuse me,—the debtors, for whatever reason did not intend or no longer intend to use the proceeds for other similar type of property, that the exempt status enjoyed by tenancy by the entirety property is lost.

Tr. at 29-30. The Court finds that Judge Howard's opinion correctly sets forth the current state of Michigan law and correctly favors the underlying policy against the recognition of entirety interest in personal property—allowing, of course, for the *limited* "exception" set forth in *Muskegon Lumber. See also Matter of Jones*, 31 B.R. at 376 ("the policy of Michigan is against recognizing the existence of tenancy by the entirety interest in personalty.")

Accordingly, for all the reasons previously set forth in this opinion, the Court will enter an order affirming the Bankruptcy Court's opinion in full.