**In the Matter of George Axel WICKSTROM, Debtor.**

**William G. LASICH, Trustee, Plaintiff,**

v.

**ESTATE OF A.N. WICKSTROM, Defendant.**

**William G. LASICH, Trustee, Plaintiff,**

v.

**James Steven WICKSTROM, Defendant.**

**Bankruptcy No. GM 87–00167. Adv. Nos. 88–0016, 88–0015.**

United States Bankruptcy Court, W.D. Michigan.

April 20, 1990.

Darrell R. Dettmann, Marquette, Mich., for plaintiff William G. Lasich, Trustee.

Donald W. Bays, Marquette, Mich., for defendants James Steven Wickstrom and The Estate of A.N. Wickstrom.

## OPINION

JAMES D. GREGG, Bankruptcy Judge.

### PROCEDURAL BACKGROUND

These adversary proceedings were instituted by William G. Lasich, the Chapter 7 Trustee and Plaintiff, hereinafter "Trustee", against the Defendants. The Trustee seeks to recover a $20,000 payment and two transfers of real property made by George Axel Wickstrom, hereinafter "Debtor", which are asserted to be avoidable preferential transfers or fraudulent conveyances under 11 U.S.C. §§ 547(b), 548(a), and 550(a).

The Debtor filed his petition for relief under chapter 7 of the Bankruptcy Code on August 28, 1987. Subsequent to the filing of the adversary proceedings, Defendant Stella Wickstrom became deceased and her entire estate passed to her husband, Defendant A.N. Wickstrom. Pursuant to court

order, Stella Wickstrom was dismissed as a defendant in one of the adversary proceedings. Subsequently, Defendant A.N. Wickstrom also became deceased and the Estate of A.N. Wickstrom has been substituted as the proper party defendant in one of the adversary proceedings. Because the court's examination of facts in this case focuses upon the interests of the parties at, or prior to, the date of the bankruptcy filing, for the sake of consistency, ease of understanding, and proper prospective, the court will refer to those interests now represented by the Estate of A.N. Wickstrom as the "Defendant Parents". Defendant James Steven Wickstrom, hereinafter "Defendant Son", is the son of the Debtor in this case. The Defendant Son and Defendant Parents are sometimes collectively referred to as the "Defendants".

There are three transfers of property made by the Debtor to the Defendants involved in this consolidated adversary proceeding; (1) the transfer of real property, the "marital home", to the Defendant Parents on May 18, 1987; (2) the transfer of real property, the "recreational camp", to the Defendant Son, also on May 18, 1987; and (3) the payment of $20,000 to the Defendant Parents on July 9, 1987.[1]

The Defendants deny that they have received any avoidable preferential transfer or fraudulent conveyance. In the alternative, to the extent they may have received any avoidable transfers, the Defendants assert certain affirmative defenses under 11 U.S.C. §§ 522(b)(2) and 547(c)(2).[2]

The above two adversary proceedings were previously consolidated for trial purposes by order of this court. The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F) and (H). The Defendants

contend they are entitled to a summary judgment as a matter of law.[3]

## STIPULATED FACTS

The parties have submitted a Stipulated Statement of Facts to the court which is fully set forth in the Defendants' brief in support of their motion. The stipulated facts are summarized below.

The Defendant Parents loaned the Debtor approximately $56,000 during the seven years prior to the Debtor's bankruptcy filing. All loans to the Debtor by the Defendant Parents were made prior to any of the transfers subject of the Trustee's causes of action.

On April 29, 1987, the Debtor was advised by the Iron River National Bank, "Bank", that unless a debt, in excess of $80,000, was repaid on or before May 6, 1987, a collection action would be instituted. The Bank made demand for repayment on May 6, 1987. The parties agree the Debtor was rendered insolvent as of May 6, 1987. During oral argument, opposing counsel stipulated that the Debtor remained insolvent after that date until the Debtor's bankruptcy filing.

On May 18, 1987, the Debtor and his non-debtor wife, Sharon Wickstrom, as tenants by the entireties, conveyed to the Defendant Parents the marital home. Pursuant to a financial statement furnished by the Debtor to the Bank, in 1983 the value of the marital home was $60,000. The Debtor's schedules filed in connection with this bankruptcy case stated the property was transferred for a consideration of $32,-000. The deed stated the consideration for the transfer was less than $100.

Also on May 18, 1987, the Debtor transferred the recreational camp to the Defendant Son. The 1983 financial statement given to the Bank listed the recreational camp as having a value of $18,000. The

---

1. The court notes that a reference was made by one of the parties to a fourth transfer to the Defendant Parents in the amount of $950. At oral argument, the Trustee's counsel and the Defendants' counsel agreed that this payment is not now an issue before the court.

2. With respect to the § 547(c)(2) defense, the Court notes the Defendants inadvertently cited § 547(c)(3) in their answer.

3. The Defendants also assert that the Trustee has failed to state a cause of action upon which relief may be granted. B.R. 7012; F.R.C.P. 12(b)(6).

Debtor's schedules stated the consideration given for the transfer was $2,500. The deed stated that the consideration given for the transfer was less than $100.

Prior to the bankruptcy filing, the Debtor received a lump sum redemption with respect to a worker's compensation claim in the amount of $23,000. The Debtor used $3,000 of these proceeds for living expenses. The remainder of the proceeds, i.e., $20,000, were paid to the Defendant Parents on July 9, 1987.

The Debtor filed his voluntary petition under Chapter 7 of the Bankruptcy Code on August 28, 1987. The Debtor's statement of affairs and schedules listed unsecured debts, excluding any obligations to the Defendants, in the amount of $94,269.93. All unsecured debts listed were solely the Debtor's obligations except for one joint debt in the amount of $300. The Defendants assert the non-debtor wife intends to pay that joint debt outside of the bankruptcy case.

The parties have agreed that the stipulated facts are solely applicable for purposes of the Defendants' motion for summary judgment. If summary judgment is denied, the parties have reserved the right to present other evidence at the trial of this adversary proceeding.

## DISCUSSION

### Standards to Grant or Deny Motion for Summary Judgment

In considering the Defendants' Motion for Summary Judgment, this court is guided by the standards set forth by Judge Gibson in *FMB–First Michigan Bank v. Van Rhee*, 681 F.Supp. 1264, 1266 (W.D. Mich.1987), wherein it is stated:

Summary judgment is appropriate only where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Atlas Concrete Pipe, Inc. v. Roger J. Au & Son, Inc.*, 668 F.2d 905, 908 (6th Cir.1982), see *Willetts v. Ford Motor Co.*, 583 F.2d 852, 854 (6th Cir. 1978); *Felix v. Young*, 536 F.2d 1126, 1130 (6th Cir.1976). The function of a

motion for summary judgment is not to allow the court to decide issues of fact but rather to determine whether there is an issue of fact to be tried. *United States v. Articles of Device, Etc.*, 527 F.2d 1008, 1011 (6th Cir.1976); *Aetna Ins. Co. v. Cooper Wells & Co.*, 234 F.2d 342, 345 (6th Cir.1956). The moving party bears the burden of clearly establishing the nonexistence of any genuine issue of fact material to a judgment in his favor. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Articles*, 527 F.2d at 1011. In determining whether there are genuine issues of fact warranting a trial, the evidence will be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir.1962). If a disputed question of material fact remains, the motion for summary judgment must be denied. *Atlas*, 668 F.2d at 908; *Felix*, 536 F.2d at 1030; *Bohn*, 303 F.2d at 427.

The court must examine all stipulated facts and conclude that no genuine issue of material fact exists before granting summary judgment.

The Defendants also argue that they should prevail because the Trustee has failed to state a cause of action. B.R. 7012; FRCP 12(b)(6). Therefore, the court must also consider a different standard from that which governs a summary judgment motion.

A Rule 12(b)(6) dismissal should be granted only when the court, upon review of the complaint, is convinced that the complainant can prove "no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). *See also Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

*Martin v. Kelley*, 803 F.2d 236, 239 n. 4 (6th Cir.1986). The court will address certain legal issues raised to determine if the

causes of action asserted by the Trustee are sufficient as a matter of law.

### Applicability of State Law Regarding Exemptions

The Trustee seeks to avoid certain prepetition transfers of real property and money from the Debtor to the Defendants pursuant to 11 U.S.C. §§ 547(b) and 548(a). The Debtor, in his schedules, elected to exempt property under state law. 11 U.S.C. § 522(b)(2). The Defendants allege the transferred proceeds from the worker's compensation settlement were, and remain, exempt from recovery or execution by creditors under Michigan law. The Defendants also contend that the marital home and recreational camp transferred by the Debtor was and remains exempt under Michigan law because the property was previously held by the Debtor and his non-debtor wife as tenants by the entireties. Therefore, the Defendants assert, as a matter of law, that they are entitled to a judgment for failure to state a cause of action.

To determine the effect and limits of any state law exemption claimed in bankruptcy by the Debtor, or asserted by the Defendants, the court must examine and construe the laws of Michigan.

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy."

*Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). ■ This court has previously stated, "[a] bankruptcy court should not create additional rights or remedies in favor of a debtor (or any other party in interest) where such rights do not exist outside of bankruptcy law *unless* such rights and remedies are statutorily authorized under the Bankruptcy Code." *Schewe v. Fair-*

*view Estates (In the Matter of Schewe)*, 94 B.R. 938, 949–50 (Bankr.W.D.Mich.1989) (emphasis in original). Although, generally exemption issues are a matter of federal law, because there is no federal exemption respecting entireties property, state law must be considered. *Michigan Nat'l Bank v. Chrystler (In re Trickett)*, 14 B.R. 85, 89 (Bankr.W.D.Mich.1981). When a debtor claims bankruptcy exemptions under state law, the effect of claiming the exemptions should be determined under state law. *Hoerner v. Elkins (In re Elkins)*, 94 B.R. 932, 933 (Bankr.W.D.Mich.1988). However, to the extent that governing bankruptcy law restricts, modifies or derogates state exemptions, federal law prevails pursuant to the Supremacy Clause. U.S. Const., Art. VI cl. 2; *Perez v. Campbell*, 402 U.S. 637, 651–52, 91 S.Ct. 1704, 1712, 29 L.Ed.2d 233 (1971).

The Defendants argue that even if the Trustee may be successful in avoiding any of the transfers, the Debtor may reassert the original exempt status respecting his property interests. The court must review the Bankruptcy Code and other authorities to determine whether the Defendants' argument is correct as a matter of law.

### When are Exemptions Determined?

■ Under the Bankruptcy Act of 1898, the United States Supreme Court held that exemption rights in bankruptcy are determinable as of the date of the bankruptcy filing.

> When the law speaks of property which is exempt and of rights of exemptions, it of course refers to some point of time. In our opinion this point of time is the one as of which the general estate passes out of the bankrupt's control, and with respect to which the status and rights of the bankrupt, the creditors and the trustee in other particulars are fixed.

*White v. Stump*, 266 U.S. 310, 313, 45 S.Ct. 103, 104, 69 L.Ed. 301 (1924). Under the Bankruptcy Code, this is still a correct statement of the law.

We do not agree with [the] Trustee's contention that Peterson's death cause[d] his exemption to lapse. "It is hornbook

bankruptcy law that a debtor's exemptions are determined as of the time of the filing of his petition." *In re Friedman,* 38 B.R. 275, 276 (Bankr.E.D.Pa.1984) (Friedman). We join these courts finding that bankruptcy exemptions are fixed on the date of filing. See *White v. Stump,* 266 U.S. 310, 313 [45 S.Ct. 103, 104, 69 L.Ed. 301] (1924); *Mansell v. Carroll,* 379 F.2d 682, 684 (10th Cir.1967).

By holding that exemptions are fixed on the date of filing, *we focus only on the law and facts as they exist on the date of filing the petition.* There is no doubt that the law as it exists on the date of filing determines a debtor's claimed exemption, 11 U.S.C. § 522(b)(2)(A), which allows a debtor to claim state-created exemptions, explicitly provides that the state law applicable on the date the petition is filed governs the exemptions which may be taken. The propriety of limiting our factual investigation to those facts existing on the date of filing is less self-evident. Nevertheless, for the reasons set forth below, *we hold today that only the facts existing on the date of filing are relevant to determining whether a debtor qualifies for a claimed exemption.* (Emphasis supplied.)

*Armstrong v. Peterson (In re Peterson),* 897 F.2d 935, 937 (8th Cir.1990); *cf. Stinson v. Williamson (In the Matter of Williamson),* 804 F.2d 1355, 1359 (5th Cir. 1986) (when case converted from Chapter 11 to Chapter 7, exemptions are determined as of the original chapter 11 filing date);

*Hollytex Carpet Mills v. Tedford,* 691 F.2d 392, 393 (8th Cir.1982) (chapter 13 plan modification does not change effective date of plan for purpose of electing exemptions).

*May the Trustee Seek to Avoid the Transfer of Worker's Compensation Proceeds as a Preferential Transfer?*

■ The Trustee seeks to recover a $20,000 payment to the Defendant Parents made on July 9, 1987. This payment was from the balance of a $23,000 worker's compensation settlement paid to the Debtor prior to the date of transfer.

The Defendants contend that any worker's compensation payment is exempt from execution by creditors pursuant to Mich. Comp.Laws Ann. § 600.6023(1)(f) [4] and § 418.821(1).[5] A careful reading of both of these Michigan statutes reveal that their primary purpose is to prevent creditors from reaching worker's compensation payments *before* such payments are received by the payee. The facts in this adversary proceeding raise the legal question of whether a worker's compensation payment remains exempt *after* the Debtor receives it and *after* the Debtor transfers it to third persons.

The Supreme Court for the State of Michigan has held that the exemption respecting worker's compensation payments only covers the right to receive funds; the exemption does not extend to the funds upon receipt nor to property subsequently purchased with those funds. *Martin v. Wayne Circuit Judge,* 228 Mich. 396, 397–

---

**4.** The Michigan exemption statute in effect as of the bankruptcy filing date was Mich.Comp.Laws Ann. § 600.6023(a)(6) which states as follows:

Sec. 6023. (a) The following property shall be exempt from levy and sale under any execution:

.　　.　　.　　.

(6) Any moneys or other benefits paid, provided, or allowed to be paid, provided, or allowed, by any stock or mutual life or health or casualty insurance company, on account of the disability due to injury or sickness of any insured person, whether the debt or liability of such insured person or beneficiary was incurred before or after the accrual of benefits under the insurance policies and contracts above specified, except that such exemption does not apply to actions to recover for neces-

sities contracted for after the accrual of such benefits;

Effective April 19, 1989, this statute was amended and redesignated as Mich.Comp.Laws Ann. § 600.6023(1)(f). No substantive change was made by the amendment.

**5.** Mich.Comp.Laws Ann. § 418.821(1) states:

Sec. 821. (1) A payment under this act shall not be assignable or subject to attachment or garnishment or be held liable in any way for a debt. In the case of the insolvency of an employer, liability for compensation under this act shall constitute a first lien upon all the property of the employer liable for the compensation, paramount to all other claims or liens, except for wages and taxes, which lien shall be enforced by order of the court.

98, 200 N.W. 160 (1924) (construing predecessor statute). The predecessor statute to Mich.Comp.Laws Ann. § 418.821(1) is identical in substance to the current statute.[6] Therefore, this court concludes that the *Martin* holding remains valid under the current exemption statute.

The Supreme Court for the State of Michigan has also considered an analogous issue involving exempt insurance proceeds. In discussing the applicable statute, the Court stated:

> The statute exempts money "to be paid". Before payment the fund cannot be reached by the creditors of the deceased or his beneficiary. It is preserved intact until after payment, when it becomes the sole property of the beneficiary, to be owned and held as any other property, *not exempt from legal process* unless made so by the general laws of the State. (Emphasis supplied.)

*Recor v. Commercial & Savings Bank of St. Clair*, 142 Mich. 479, 484, 106 N.W. 82 (1905), as quoted in *Martin*, 228 Mich. at 398, 200 N.W. 160.

The United States Supreme Court has also construed an analogous statute which exempted veterans' benefit payments from taxation, claims of creditors, attachment, levy or seizure. Interpreting the federal statute and reaching a result consonant with *Martin*, the Court held that investments purchased with veterans' benefit proceeds lost any exempt status.

> The first sentence grants exemption from taxation, claims of creditors, attachment, levy or seizure under any legal process whatever. The things exempted are "payments of benefits" due or to become due either before or after receipt by the beneficiary.
>
> Investments purchased with money received in settlement of benefits are not such payments due or to become due. Accordingly, giving the words employed their ordinary meaning, the notes and bonds in question are not exempted by the first sentence in section three. It

left them, like other property, subject to taxation, claims of creditors, and legal process.

*Carrier v. Bryant*, 306 U.S. 545, 547, 59 S.Ct. 707, 708, 83 L.Ed. 976 (1939).

■ Even assuming *arguendo* that the proceeds from a worker's compensation award retain their exempt status, an otherwise preferential transfer of the proceeds is not protected from avoidance because it involves exempt or exemptible property. An Indiana bankruptcy court has concluded that a worker's compensation payment that was transferred to a creditor prepetition loses its exempt status. The fact that the property transferred is, or may be, exempt makes no difference. "Where a debtor makes a conscious choice to voluntarily transfer exemptible property to a creditor, the debtor has, at least impliedly, also made the choice not to claim that property as exempt. The exemption is thus waived." *Warsco v. Ryan (In re Richards)*, 92 B.R. 369, 372 (Bankr.N.D.Ind. 1988). In *Richards*, Judge Grant determined, utilizing reasoning that is highly persuasive to this court, that a transfer of exempt or exemptible property may be recovered by the trustee when all elements in § 547(b) are met.

A Michigan bankruptcy court has considered the issue of whether a transfer of insurance proceeds claimed as exempt may be recovered by a trustee as a preferential transfer. *Mason v. Kewin (In the Matter of Kewin)*, 24 B.R. 158 (Bankr.E.D.Mich. 1982). In *Kewin*, the debtor paid an antecedent debt to his father, within ninety days of the bankruptcy petition, in the amount of $6,518.32. Noting the Bankruptcy Code contains no statutory exception which authorizes voluntary preferential payments of exempt property, the court rendered judgment in favor of the trustee. *Kewin*, 24 B.R. at 161.

Prior to the filing of the petition, any property interest that the Debtor had an interest in, cannot technically be termed *exempt* property for purposes of some fu-

---

**6.** The predecessor statute stated: "No payment under this act shall be assignable or subject to attachment or garnishment, or be held liable in any way for any debts." 2 Comp.Law 1915, § 5451.

ture bankruptcy, only *exemptible* or *potentially* exempt. If at any point in time prior to filing, the potentially exempt property is *voluntarily* transferred to a third party, all interests of the debtor in that property terminate. The property cannot subsequently be claimed as exempt under the Bankruptcy Code based upon some *former* interest held by the debtor.[7] If the debtor disposes of an interest in property, 11 U.S.C. § 101(50), and the debtor has no remaining legal or equitable interest as of the bankruptcy filing date, the transferred property is not property of the estate.[8] Because only the debtor "may exempt from property of the estate", the transferred property may not be claimed as exempt. 11 U.S.C. § 522(b).

The Debtor voluntarily transferred $20,000 to the Defendant Parents 49 days prior to the filing of his bankruptcy petition. Having no property interest in the voluntarily transferred funds under state law, the Debtor was, and now is, unable to claim the worker's compensation proceeds as exempt. Even if the Debtor had not transferred the proceeds, after receipt the proceeds lost their exempt status under Michigan law. *Martin,* 228 Mich. at 398, 200 N.W. 160.

This court therefore holds that the $20,000 transferred by the Debtor to the Defendant Parents is not exempt nor exemptible. Therefore, the transfer of the worker's compensation proceeds may be avoided by the Trustee, provided all the requisite elements set forth in 11 U.S.C. § 547(b) are satisfied.

*May the Trustee Seek to Avoid the Transfer of Entireties Property as a Preferential Transfer or a Fraudulent Conveyance?*

▆ Under Michigan law, property held by tenancy by the entireties is exempt from the claims and execution of creditors of solely one spouse; however creditors which hold joint claims against both spouses may reach the entireties property notwithstanding its otherwise exempt status. *Sanford v. Bertrau,* 204 Mich. 244, 248–54, 169 N.W. 880 (1918). Entireties real property may be transferred or encumbered only by a joint deed or joint mortgage executed by both spouses; jointly the spouses hold complete ownership of entireties property. Conversely, because neither spouse holds a severable interest, one spouse cannot unilaterally sever or convey entireties property absent consent by the other spouse. *Sanford,* 204 Mich. at 250–253, 169 N.W. 880, citing *Sharpe v. Baker,* 51 Ind.App. 547, 99 N.E. 44 (1911); *Field v. Steiner,* 250 Mich. 469, 477, 231 N.W. 109 (1930) (concurring opinion). Within one year prior to the Debtor's bankruptcy filing, the Debtor and his non-debtor spouse jointly and voluntarily conveyed their entireties property, the marital home and the recreational camp, to the Defendant Parents and Defendant Son respectively. The entireties estates were thereby terminated and the Debtor and his spouse no longer held any remaining interest in the property.

The major argument of the Defendants is that because creditors could not have executed upon the entireties property had the transfers not been made, creditors are not, and could not be, prejudiced by the transfers; *ergo* "no harm-no foul". The Defendants' argument is based upon hypothetical facts that do not exist. Conveyances of property have legal ramifications. This court therefore must analyze the law in accordance with what happened rather than what might have happened.

Recent decisions under the Bankruptcy Code are divergent whether a trustee may

---

**7.** The court recognizes an exception exists when the property is *involuntarily* transferred. 11 U.S.C. § 522(g) and (h).

**8.** The transferred property interest may subsequently become property of the estate if the trustee prevails in exercising an avoidance power. 11 U.S.C. § 541(a)(3). *Dery v. United States (In re Bridge),* 90 B.R. 839, 845 (Bankr.E.D.Mich. 1988). The trustee may recover the property, or

the value of the property, from a transferee. 11 U.S.C. § 550; *Ray v. City Bank and Trust Co. (In re C–L Cartage Co., Inc.),* 899 F.2d 1490, 1494–95 (6th Cir.1990). The debtor may not exempt such recovered property, unless it was involuntarily transferred and exemptible, because the recovered property is automatically preserved for the benefit of the estate. 11 U.S.C. § 551; *In re Milcher,* 86 B.R. 103, 105 (Bankr.W.D.Mich. 1988).

avoid the transfer of exempt, or potentially exempt, property as a preferential transfer or fraudulent conveyance. It is extremely difficult, and perhaps impossible, to reconcile the reported decisions.[9]

One court has held that a trustee may avoid the transfer of exempt homestead property as a preferential transfer. Relying on the language of the Bankruptcy Code and three respected bankruptcy commentaries, the court determined that the "diminution of estate doctrine" is not viable to defeat the trustee's powers to avoid a transfer of exempt property. *Covey v. United Fed. Sav. and Loan Ass'n of Ill. (In re Owen)*, 104 B.R. 929, 931–32 (C.D. Ill.1989). To the contrary, another court adopted the old Act diminution of the estate analysis. The trustee was held to be unable to avoid a transfer of homestead property because absent the transfer, creditors could not have reached the property. "In short, —no harm, no foul." *Jarboe v. Treiber (In re Treiber)*, 92 B.R. 930, 932 (Bankr.N.D.Okla.1988). To further complicate reported precedent, another case apparently concludes the trustee may seek to avoid a transfer of an exemptible homestead under 11 U.S.C. §§ 547(b) and 548(a)(2) but may not seek to avoid the transfer under 11 U.S.C. § 548(a)(1). *Kepler v. Weis (In the Matter of Weis)*, 92 B.R. 816, 823 (Bankr.W.D.Wis.1988) (under § 548(a)(1), "the trustee cannot, as a matter of law, prove that the transfer was made with the actual intent to hinder, delay or defraud creditors.").

The court is also aware of cases which address asserted fraudulent conveyances in conjunction with objections to discharge brought under 11 U.S.C. § 727(a)(2). *Lee Supply Corp. v. Agnew (In the Matter of Agnew)*, 818 F.2d 1284, 1290 (7th Cir.1987) (debtor's release of entireties proceeds to non-debtor spouse not fraudulent; discharge granted); *Grant v. Peeples (In re Peeples)*, 105 B.R. 90, 94–95 (Bankr.M.D.Fla.1989) (transfer of entireties property, without existence of joint debts, is not a transfer of debtor's property and cannot be avoided as a fraudulent conveyance; discharge granted). Although these cases arose in a discharge context, they must be considered in this court's analysis.

■ Under 11 U.S.C. § 541(a) *all* property in which the debtor has an interest becomes property of the estate.[10] Property of the estate includes a debtor's interest in entireties property. *Liberty State Bank & Trust v. Grosslight (In the Matter of Grosslight)*, 757 F.2d 773, 775 (6th Cir. 1985); *Trickett*, 14 B.R. at 88–89. Property of the estate also includes other types of exempt property as well. *Borock v. Bidlofsky (In re Bidlofsky)*, 57 B.R. 883, 895 (Bankr.E.D.Mich.1985) (money on deposit in debtor's name is property of estate notwithstanding claimed exemption); *Owen*, 104 B.R. at 932 (debtor's homestead is property of estate); 2 Norton, *Bankruptcy Law and Practice*, § 32.04 (all property becomes part of estate).

■ If a debtor fails to specifically exempt entireties property, the trustee may sell the debtor's interest in such property under 11 U.S.C. § 363(h)–(j). *Grosslight*, 757 F.2d at 776. Further, even when a debtor exempts entireties property under 11 U.S.C. § 522(b)(2), a debtor's interest in entireties property is reachable by joint creditors and is not exempt. *Grosslight*, 757 F.2d at 776. In such an instance, the trustee may administer the property for the benefit of joint creditors. Therefore, under the Bankruptcy Code, creditors have rights to potentially exempt entireties property.

---

**9.** Notwithstanding such difficulty or impossibility, see note 14 *infra*.

**10.** Compare former 11 U.S.C. § 110, Section 70 of the Bankruptcy Act of 1898, as amended by the Chandler Act in 1938, which states in part as follows:

"All property, wherever located, *except insofar as it is property which is held to be exempt*, in which the bankrupt has at the date of bankruptcy an estate or interest by the entirety and which within six months after bankruptcy becomes transferable in whole or in part solely by the bankrupt shall, *to the extent it becomes so transferable*, vest in the trustee and his successor or successors, if any, upon his or their appointment and qualification, as of the date of bankruptcy." [Emphasis added.]

■ The possible rights of creditors to entireties property will depend upon the exemptions elected by a debtor when the bankruptcy petition is filed. *White v. Stump*, 266 U.S. at 312, 45 S.Ct. at 103–04; *Peterson*, 897 F.2d at 936–37. In Michigan, a debtor may elect either federal or state exemptions.[11] The possible rights of creditors will be governed by both the *type* of exemptions (federal or state) elected by a debtor *and* the *specific property* claimed exempt.

The cases which adopt a "no harm-no foul" result seem to ignore the possible rights that creditors have in potentially exempt property. Consider the following illustrations:

(1) The day prior to the filing of a debtor's bankruptcy filing, the debtor and a non-debtor spouse voluntarily transfer exemptible entireties property to a third person, either to satisfy an antecedent debt or as a gift without consideration. The debtor then elects federal exemptions and claims property as exempt under 11 U.S.C. § 522(d)(1) and (5). If the trustee is unable to avoid the transfer of entireties property, does the transfer of the entireties property result in "no harm-no foul"?

(2) Within a year of a bankruptcy filing, the debtor and a non-debtor spouse transfer entireties property to an insider, either in payment of antecedent debt or without consideration. At the time of the transfer, creditors exist which hold joint claims against the debtor and the non-debtor spouse. Is the trustee prohibited from seeking to avoid the transfer?

(3) Before a bankruptcy filing, a debtor and a non-debtor spouse sell their entireties property and deposit the cash proceeds from the sale in a bank account. Shortly before the debtor's bankruptcy filing, the funds are used to pay an antecedent debt, or the funds are transferred without consideration, to a third person. May the trustee seek to recover the transfer or is it subject to a "no harm-no foul" analysis?

In the first illustration, the trustee should not be prohibited from seeking to avoid the transfer. The exemptible entireties property under state law has been transferred away and, absent avoidance under 11 U.S.C. §§ 547(b) or § 548, the property would not become property of the estate under 11 U.S.C. § 541(a)(3). Therefore, under a "no harm-no foul" approach, creditors of the estate would lose their possible rights to the property. Other property exempted by the debtor under the federal exemptions would not be reachable by creditors. Absent an avoidance by the trustee of the transfer of entireties property, in effect, the debtor is able to exempt property under both state and federal law. This is prohibited. See, e.g., *In the Matter of Kochell*, 732 F.2d 564, 566 (7th Cir.1984) ("the debtor must choose either the exemptions to which he is entitled under the federal exemptions scheme, or those to which he is entitled under other federal law and the state of his domicile"); *In re Slezak*, 63 B.R. 625, 629 (Bankr.W.D.Ky.1986).

In the second illustration, entireties property which is subject to claims of joint creditors has been transferred away. Absent avoidance of the transfer by the trustee, the property is not property of the estate; it is not available to be administered for the benefit of joint creditors. The Bankruptcy Code contemplates the administration of entireties property. *Grosslight*, 757 F.2d at 776; *Trickett*, 14 B.R. at 90. Even assuming the joint creditors may seek to avoid the transfer in the state courts to reach the entireties property conveyed, such litigation is an "inadequate device" and "is no longer necessary." *Trickett*, 14 B.R. at 90. Further, in an instance when only *one* joint creditor takes action in the state courts, or in an instance where the net recoverable entireties property has a value less than the aggregate joint claims, the bankruptcy principle of equality of distribution would likely be defeated. The result would be that the *remaining*

**11.** Michigan has not chosen to "opt-out" to prohibit a debtor from electing the so-called federal exemptions under 11 U.S.C. § 522(d).

joint creditors would not receive a prorata distribution with regard to their respective joint claims.

An inequitable distribution of property, including a preferential payment to one creditor at the expense of other creditors, or a fraudulent conveyance, subverts the spirit as well as the mandate of the Bankruptcy Code and undermines federal policy. A fundamental purpose of the bankruptcy laws is to distribute property prorata to creditors; the statute would become seriously deficient if construed to allow a creditor or a transferee of property to defeat its purpose and obtain an advantage over other creditors. *Reed v. McIntyre,* 98 U.S. 507, 512, 25 L.Ed. 171 (1878). *Accord, Acme Harvester Co. v. Beekman Lumber Co.,* 222 U.S. 300, 32 S.Ct. 96, 56 L.Ed. 208 (1911); *Kothe v. R.C. Taylor Trust,* 280 U.S. 224, 50 S.Ct. 142, 74 L.Ed. 382 (1930); *Nathanson v. NLRB,* 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952); *Wukelic v. U.S.,* 544 F.2d 285 (6th Cir.1976).

One of the longtime principles of bankruptcy law is that all creditors of each class shall be treated equally, 11 U.S.C. Sec. 726(b). Thus, there should be orderly administration of debtor's property without a race by creditors for judgments and liens which give priority to the more aggressive creditors. Since the bankruptcy court now has the jurisdiction to protect all joint creditors, it should assume that responsibility in order that justice and equality be served. Therefore, it should no longer be the case that only those joint creditors who apply for a lift of stay be entitled to proceed against entireties property as was the case under the Bankruptcy Act of 1898. Instead, this court will exercise its jurisdiction over the entireties property and administer the entireties property for the equal benefit of all joint creditors.

*Trickett,* 14 B.R. at 90. "The bankruptcy code attempts to ensure that all creditors similarly situated receive equal treatment, by allowing the trustee to recover certain payments or transfers of property which prefer some creditors over others." *C–L*

*Cartage,* 899 F.2d at 1492. If a "no harm-no foul" analysis is adopted as a matter of law, how can a trustee recover the transferred entireties property to administer for the benefit of the joint creditors?

In the third illustration, a no-harm, no-foul analysis might warrant the conclusion that the trustee would be precluded from seeking to recover the transfer as well. Assuming that there were no joint creditors and the debtor elected state exemptions, it might be argued that because creditors were unable to reach the property under state law, they are unable to reach the property in bankruptcy via the trustee's avoidance powers.[12] Under Michigan law, disposition and conversion of entireties property to proceeds generally results in the dissolution of the exempt status. A limited exception exists when the proceeds are to be reinvested in other similar entireties property within a reasonable period of time. *Jackson v. Leitch (In the Matter of Jackson),* 92 B.R. 211 (W.D.Mich.1988). Absent a present intent to reconvert the proceeds to exempt entireties property, creditors of a single spouse may execute on that spouse's share of the entireties proceeds. Upon transfer of the entireties property to a third person, the entireties estate is severed. It would be anomalous to hold that, while a creditor of a single spouse may seek to recover that spouse's share of the entireties proceeds for its benefit, a trustee may not attempt to recover the debtor's share of transferred entireties property for the benefit of all creditors.

Under Michigan law, when a tenancy by the entireties is severed, the spouses are generally each entitled to a one-half interest to the property as tenants in common. *In the Matter of Ignasiak,* 22 B.R. 828, 830 (Bankr.E.D.Mich.1982). However, any claimed exempt status of the entireties property, or one spouse's claimed entitlement to a one-half interest, may be challenged by the showing that one spouse used individual funds, while insolvent, to reduce a mortgage debt (or increase the entireties estate) in an effort to place individual funds beyond the reach of creditors.

**12.** This is the gravamen of the Defendants' argument in this adversary proceeding.

*Elkins,* 94 B.R. at 934, citing *McCaslin v. Schouten,* 294 Mich. 180, 292 N.W. 696 (1940) and *Dunn v. Minnema,* 323 Mich. 687, 36 N.W.2d 182 (1949). A trustee should be permitted to pierce a claimed entireties exemption, notwithstanding any prepetition transfer of property, to recover the fraudulently transferred property, or value thereof, for the benefit of creditors. In this type of situation, the strict application of a no harm, no foul approach would defeat a trustee's recognized rights.

In considering the issue presented, the court is cognizant of a case, decided under the Bankruptcy Act of 1898. The Michigan Supreme Court held that the transfer of exempt homestead property cannot constitute a preferential transfer or a fraudulent conveyance because exempt property does not become part of the bankruptcy estate. *Cross v. Commons,* 336 Mich. 665, 670–71, 59 N.W.2d 41 (1953). A debtor (with his spouse) could therefore transfer such property as an "absolute right". *Cross,* 336 Mich. at 669, 59 N.W.2d 41. Under the old Act, because the bankruptcy estate available for distribution to creditors was not diminished by transfer of the fully exempt homestead equity, creditors were not, and could not be, prejudiced by any such transfer. *Cross,* 336 Mich. at 669, 59 N.W.2d 41.[13] It was therefore held the trustee could not avoid the transfer of exempt property. Similarly, under the old Act, it was also held that the trustee of a single bankrupt spouse took no part of the entireties property. *McMullen v. Zabawski (In re Zabawski),* 283 F. 552, 556 (E.D.Mich. 1922); *In re Berry,* 247 F. 700, 706 (E.D. Mich.1917).

Under the Bankruptcy Act of 1898, 11 U.S.C. § 24 (repealed 1979), and the prior Bankruptcy Act of 1867, property generally exempted by state law from the claims of creditors formed no part of the assets in bankruptcy, and only a state court would have jurisdiction over claims against exempt assets. *Lockwood v. Exchange Bank,* 190 U.S. 294, 298–99, 23 S.Ct. 751, 753, 47 L.Ed. 1061 (1903).

*Grosslight,* 757 F.2d at 775. Therefore, under the Bankruptcy Act of 1898, a transfer of entireties property was not subject to a trustee's avoidance powers when only one spouse filed for bankruptcy relief.

The holdings in these Michigan cases resulted because exempt property was not property of the estate under § 70(a)(5) the Bankruptcy Act of 1898. 11 U.S.C. § 24 (repealed 1979). Under the Bankruptcy Code, this is no longer the law. *All* property, including that which a debtor may claim as exempt, now becomes part of the bankruptcy estate. 11 U.S.C. § 541(a); *Grosslight,* 757 F.2d at 775; *Bidlofsky,* 57 B.R. at 895; *Trickett,* 14 B.R. at 88–89. Therefore, cases such as *Cross, McMullen,* and *Berry* are no longer cogent.

Under the Bankruptcy Code, this court determines that a trustee may seek to avoid prepetition transfers of exempt, or exemptible, property. *Owen,* 104 B.R. 929; *Richards,* 92 B.R. 369; *Weis,* 92 B.R. at 820–821 (preferential transfer cause of action); *Kewin,* 24 B.R. 158; *In the Matter of Ziegler,* 20 B.R. 449 (Bankr.S.D.Ohio 1982); 2 Norton, *Bankruptcy Law and Practice,* § 32.04; 4 *Collier on Bankruptcy,* ¶ 547.03(2), n. 20 (15th ed. 1988); R. Ginsberg, *Bankruptcy,* ¶ 6104, ¶ 6201 and ¶ 6202 (1988); *contra, Treiber,* 92 B.R. at 932; *Weis,* 92 B.R. at 823 (fraudulent conveyance cause of action under § 548(a)(1)); *cf. Agnew,* 818 F.2d at 1290 (fraudulent conveyance in connection with objection to discharge); *Peeples,* 105 B.R. at 93–95 (same).[14]

---

**13.** The *Cross* court stated for a trustee to recover a preference, there must be a "diminution of the estate". To the extent the diminution of the estate doctrine survives, it has been subsumed in 11 U.S.C. § 547(b)(5), a necessary element to avoid a preferential transfer. In this opinion, "diminution of the estate" and "no harm-no foul" may be taken as identical concepts.

**14.** Although four cases have been cited as *contra,* they may be distinguishable or explainable.

In *Treiber,* the debtor transferred exempt homestead property to his spouse and the property remained exempt under Oklahoma law.

In *Peeples,* the property transferred was wedding gifts, household goods and $1950 from a joint bank account. Under Florida law, a bank account may be held in the entireties. This is not true in Michigan. *In re Nelson D'Water,* Case No. 14,990 (Bankr.W.D.Mich.1958); *In re Sutton,* Case No. 15,766 (Bankr.W.D.Mich.1959);

A trustee's ability to seek avoidance of transfers of exempt entireties property must be treated correspondingly with the trustee's ability to avoid transfers of other types of exempt, or exemptible, property. No valid basis exists to mandate disparate results solely depending upon the type of exempt property voluntarily transferred by a debtor. Likewise, no distinction should be drawn based upon whether the trustee asserts a preferential transfer or a fraudulent conveyance has taken place. Rather, the correct focus, in each and every adversary proceeding, should be directed to whether the trustee is able to prove *all* requisite elements with respect to an asserted avoidance action.

■ This court is also somewhat perplexed by the Defendants' assertion that they are entitled to raise the exemptible or exempt status of the transferred entireties property. The right to assert property as exempt is a personal right of the Debtor.

It is a right which exists only for the benefit of the debtor and his dependents and it may not be asserted by others, on behalf of the debtor. *In re Cates,* 73 B.R. 874, 877 (Bankr.D.Or.1987); *Matter of Osburn,* 56 B.R. 867, 874 (Bankr.S.D. Ohio 1986); *In re Ross,* 18 B.R. 364, 369 (D.N.D.N.Y.1982).

To permit a creditor to raise the issue of exemptability, as a defense to a preference, would violate both the nature and theory of exemptions. The opportunity to claim an exemption would no longer be personal to the debtor, neither would it exist only for his benefit. Instead, the right would be shared by the debtor with certain creditors and would exist for the benefit of the debtor and certain preferred creditors. Furthermore, the purpose of an exemption is to keep property out of the hands of a creditor.

*Richards,* 92 B.R. at 372. This reasoning is equally, if not more, applicable to instances when a transferee receives property for no consideration or from an attempt by a debtor to hinder, delay or defraud creditors.

■ When a transfer of entireties property occurs by the voluntary act by a debtor and the non-debtor spouse, the debtor will be deemed to have made a conscious decision not to claim the property as exempt. *Richards,* 92 B.R. at 372; *Kewin,* 24 B.R. at 161. The proper inquiry is not only what the debtor has transferred to a preferred creditor or donee but also what the creditor or donee has received at the expense of other creditors.[15] When a debtor and his non-debtor spouse transfer entireties property, the transferee receives

---

*In re Klein,* Case No. HG 78–00164–B–1 (Bankr. W.D.Mich.1978). Further, under Florida law, it has been held entireties property does not become part of a bankruptcy estate. The law in the Sixth Circuit is to the contrary. *Grosslight,* 757 F.2d at 775; *Trickett,* 14 B.R. at 88–89.

In *Weis,* the court concluded that the "diminution of the estate" theory is flawed under the Bankruptcy Code with regard to preferential transfer actions. However, based upon *Agnew,* the court in *Weis* concluded the trustee is unable, as a matter of law, to demonstrate the asserted fraudulent transfer was made with an actual intent to hinder, delay or defraud creditors. This distinction appears somewhat incongruous. After closely examining *Agnew,* which was decided under Indiana law, it appears that the entireties residence was sold and converted into another residence owned by the wife in which both spouses continued to reside. This is analogous to Michigan law which permits proceeds of entireties property to be reinvested in similar property within a reasonable time. *Jackson,* 92 B.R. at 213. This court believes *Weis* and *Agnew* should *not* stand for the propo-

sition that a transfer of entireties property can *never* be avoided under § 548(a)(1); rather, the better approach is to examine a debtor's intent in making a transfer according to the facts and circumstances in each case.

Finally, the court notes that *Peeples* and *Agnew* were decided under § 727(a)(2); the creditors sought to deny the debtors' discharges. Given the fact that a debtor's right to a discharge is jealously guarded, it is easier to understand the courts' decisions.

15. In *C–L Cartage,* 899 F.2d at 1494, the Sixth Circuit, citing *Levit v. Ingersoll Rand Financial Corp.,* 874 F.2d 1186, 1195 (7th Cir.1989), states that a transfer must be defined from the debtor's perspective rather than from the recipient's perspective. The above analysis does not contradict such an approach. Giving due consideration to the equality of distribution principle, a court should also view a transfer from the standpoint of the effect of the transfer upon the entire creditors' body. Property that is, or may be, available for *all creditors* should not be given to a preferred creditor or a donee recipient.

the debtor's interest in such property. Simultaneously with the voluntary transfer, the debtor waives the right to claim any present or future exemption. Therefore, a trustee's cause of action may arise for the benefit of creditors, to obtain the debtor's portion of the transferred property. *Grosslight,* 757 F.2d at 776 (when the debtor fails to exempt entireties property, the trustee may sell the property under 11 U.S.C. § 363(h)–(j)). In such an instance, all the debtor's creditors, whether they hold joint or several claims, should be entitled to share prorata the recovered property, or the value thereof, in accordance with their respective priorities under the distribution sections of the Bankruptcy Code. 11 U.S.C. § 726(a).

This court therefore rejects the "no harm-no foul" approach or the "diminution of the estate" doctrine in this adversary proceeding and in similar circumstances.[16]

The court holds, as a matter of law, the trustee is not prohibited from seeking to recover, as a preferential transfer or a fraudulent conveyance, the transfers of exempt or exemptible entireties property by the Debtor and his non-debtor spouse to the Defendant Parents and the Defendant Son. Litigable causes of action exist which must be determined pursuant to the facts and with reference to the elements of the causes of action. Further, material con-

tested facts exist under both 11 U.S.C. § 547(b) and § 548(a).[17]

## CONCLUSION

The Trustee has stated valid causes of action under 11 U.S.C. §§ 547(b) and 548(a). The Defendants' motion for judgment under B.R. 7012 which incorporates F.R.C.P. 12(b)(6) is denied. Material contested facts exist with regard to certain elements of the asserted causes of action. The Defendants' motion for summary judgment is denied. An order shall be entered accordingly.

---

**16.** The "diminution of the estate" doctrine may have continuing viability in instances when a transfer is made to a fully secured creditor who holds a perfected nonavoidable lien. "Payments to a creditor who is fully secured are not preferential since the creditor would receive payment up to the full value of his collateral in a Chapter 7 liquidation. Payments to an unsecured or undersecured creditor, however, are preferential." *C–L Cartage,* 399 F.2d at 1493. Reiterating, the proper focus in preference actions is upon the element set forth in 11 U.S.C. § 547(b)(5). *See Neuger v. United States (In re Tenna Corp.),* 801 F.2d 819, 822–23 (6th Cir. 1986) (a hypothetical liquidation of the debtor's estate must be conducted to determine whether a given payment permitted a creditor to receive more than it would have in a Chapter 7 liquidation); *Elliott v. Frontier Properties (In re Lewis W. Shurtleff, Inc.),* 778 F.2d 1416, 1421 (9th Cir.1985) (if bankruptcy distribution is less than 100% to unsecured creditors, any payment to an

unsecured creditor during the preference period will enable the creditor to receive more than it would have received in the chapter 7 liquidation and the payment had not been made).

**17.** The principal contested facts in the preference avoidance action appear to be the value of the debtor's interest in the entireties properties transferred and the effect of the transfers under 11 U.S.C. § 547(b)(5). The major contested facts in the fraudulent conveyance action relate to the value of the debtor's interest in property transferred, the consideration received by the debtor, if any, and intent. The court notes that the intent element is seldom directly shown; rather intent is often circumstantially inferred by the so-called "badges of fraud". *Bentley v. Caille,* 289 Mich. 74, 78, 286 N.W. 163 (1939); *United States v. Barbara (In re Otis & Edwards),* 115 B.R. 901 (Bankr.E.D.Mich.1990); *Penner v. Penner (In re Penner),* 107 B.R. 171, 175–76 (Bankr.N.D.Ind.1989).